ROY CAMPBELL, WISE AND WRIGHT, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21865. Promulgated December 18, 1950.

*Wesley E. Seale, Esq.*, for the petitioner.
*Irene Scott, Esq.*, and *Roy Wentz, Esq.*, for the respondent.

896

OPINION.

ARUNDELL, *Judge:* Petitioner claims that its excess profits tax for the fiscal year ended July 31, 1943, imposed without the benefits of section 722 was excessive and discriminatory, entitling it to an excess profits credit based upon a constructive average base period net income as provided by section 722 (a).[1] Petitioner alleges that its excess profits credit based on income was an inadequate standard of normal earnings because of the existence in its business during the base period of the events and conditions specified in sections 722 (b) (3) (B), 722 (b) (4), and 722 (b) (5) of the Internal Revenue Code.

To qualify for relief under the provisions of section 722 (b) (3) (B), a taxpayer must first establish that its excess profits tax credit based on income is an inadequate standard of normal earnings *because*—

(3) the business of the taxpayer was depressed in the base period by reason of conditions generally prevailing in an industry of which the taxpayer was a member, subjecting such taxpayer to

* * * * * *

(B) sporadic and intermittent periods of high production and profits, and such periods are inadequately represented in the base period,

* * * * * *

The only evidence offered by petitioner as to conditions prevailing in its industry was certain figures representing its own gross sales, net profits and losses for the fiscal years ending July 31, 1933, through July 31, 1940, and the net profits and losses experienced by two of its competitors over the same period. The earnings experience of the petitioner and its competitors indicates that over the 8-year period covered by such figures, conditions generally prevailed in the industry which subjected the petitioner as well as other members of its industry to sporadic and intermittent periods of high production and profits.

However, petitioner's membership in an industry subject to sporadic and intermittent periods of high production and profits and the depressed state of its business during the base period are not sufficient to establish eligibility for relief under section 722 (b) (3) (B). It must demonstrate that its business was depressed and that its years of high production and profits were not adequately represented dur-

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

ing the base period due to conditions which generally prevailed throughout the industry and not because of conditions peculiar to itself such as are covered by the provisions of section 722 (b) (1) and section 722 (b) (2). Therefore, the petitioner must show that the other members of its industry were also depressed because of such conditions and that the base period was not representative of the normal earnings of the industry due to the failure to reflect years of high production and profits characteristic of the industry. Regulations 112, section 722-3 (c); [2] Sen. Rept. No. 1631, 77th Cong., 2d sess., 1942–2 C. B. 504, 650, 651; [3] cf. *Pabst Air Conditioning Corp.*, 14 T. C. 427, 433–435; *El Campo Rice Milling Co.*, 13 T. C. 775.

The evidence of the earnings of petitioner's competitors does not show that a business depression was encountered throughout the industry during the base period, or that the base period did not represent an adequate measure of normal earnings for the industry in general. On the contrary, the figures presented by the petitioner demonstrate that its competitors enjoyed their most profitable years in 1937 and 1939 during the base period, which indicates to us that the industry of which petitioner was a member was not depressed during the base period and that the sporadic and intermittent periods of high earnings which were characteristic of the industry were adequately reflected in the base period. Although it is readily apparent that petitioner's business was depressed during the base period, we cannot speculate as to the cause. We can only be sure that the losses incurred by petitioner in the first three of its base period years and the modest profit realized in its last base period year stemmed not from depressive conditions generally prevailing in the industry but from conditions or factors outside the purview of section 722 (b) (3) (B). Therefore, petitioner has failed to establish its eligibility for relief under section 722 (b) (3) (B).

---

[2] SEC. 35.722-3  Determination of Excessive and Discriminatory Tax; Taxpayer Entitled to Excess Profits Credit Based on Income.

\* \* \* \* \* \* \*

(c) Business depression in base period because of variant profits cycle or sporadic and inadequately represented profits periods. \* \* \* *The ordinary circumstances existing in the case of the industry of which the taxpayer is a member and which produce business depression in the case of the taxpayer must also be established by the taxpayer to have produced business depression with respect to the industry generally during the base period.* [Emphasis added.]

\* \* \* \* \* \* \*

[3] 3. The business of the taxpayer was depressed in the base period because conditions generally prevailing in an industry of which the taxpayer is a member are such that the taxpayer is subject either to a profits cycle which differs materially in length and in amplitude from the general business cycle, or to sporadic and intermittent periods of high production and profits and such periods are not adequately represented in the base period. \* \* \*.

\* \* \* \* \* \* \*

\* \* \*. *In order to qualify for relief under this paragraph, it is of course necessary for the taxpayer to show that the conditions which made the base period an inadequate measure for the industry in general also obtained specifically with respect to the taxpayer.* [Emphasis added.]

Petitioner further contends that it experienced a change in the character of its business during the base period within the meaning of section 722 (b) (4)[4] and that because of the alleged change its actual average base period net income did not reflect the normal operation of its business for the entire base period. Petitioner cites as a change in the character of its business the changes in business policy and operation made in 1936, at which time it commenced to process, pack, brand, and ship vegetables under its own direct supervision in mixed carload lots rather than handling straight carload lots of unbranded commodities purchased from farmers and shippers and instituted a program designed to increase direct sales to small jobbers rather than marketing its produce through commission agents.

The change in business policies upon which the petitioner relies, under proper circumstances, could very well constitute a change in the character of its business within the meaning of section 722 (b) (4). However, the statute requires the petitioner to show that the change resulted in a higher level of normal earnings which was not adequately reflected in its actual average base period net income. In *Wisconsin Farmer Co.*, 14 T. C. 1021, 1029, we pointed out with reference to section 722 (b) (4) that:

> The nature or character of a taxpayer's business is at all times subject to many changes which do not necessarily serve to increase the earnings of the business but which in fact may actually result in substantial losses. However, the occurrence of a change in the character of a taxpayer's business for the purposes of securing relief under section 722 is important only if the change directly results in an increase of normal earnings which is not adequately reflected by its average base period net income computed under section 713. It is clear that the critical consideration in granting relief to the taxpayer in such cases as *East Texas Motor Freight Lines, 7-Up Fort Worth Co.*, and *Lamar Creamery Co., supra*, was the fact that the change was deemed sufficiently important in the taxpayer's business, as reflected by the increase in its earning capacity resulting from the change, to render its average base period net income inadequate as a standard of normal earnings for the entire base period.

There is nothing in the present record to demonstrate that the changes in business policy or the method of operations relied upon by the petitioner as constituting a change in the character of its business did in fact or could have reasonably been expected to result in a higher level of normal earnings. Petitioner's officers testified that the new

---

[4] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

\* \* \* \* \* \* \*

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. \* \* \*

methods permitted them to secure a better price for its produce and contributed to the stability of the business. However, it has not been shown that the changes increased the petitioner's sales or that any increase in sales or prices was not offset by the increased costs of processing its produce. We think it is particularly significant that after the purported changes the petitioner experienced losses of $1,113.74, $13,066.94, and $10,493.94 in the fiscal years ending July 31, 1937, 1938, and 1939, respectively, and a profit of only $6,219.11 in the fiscal year ending July 31, 1940. The fact that petitioner was not able to keep pace with its competitors who experienced high profits in both 1937 and 1939 casts further doubt upon the petitioner's claims that the changes in business policies instituted in 1936 thereafter produced a higher level of earnings for the business.

In our opinion, petitioner has failed to establish that the changes in business policies and operations made in 1936 resulted in a higher level of normal earnings which were inadequately reflected in its average base period net income. Therefore, we cannot regard the changes relied upon by the petitioner as a change in the character of the business entitling the petitioner to relief under the provisions of section 722 (b) (4) of the Internal Revenue Code.

In its application for relief filed with the Commissioner, petitioner also claimed that it was eligible for relief under the provisions of section 722 (b) (5).[5]

At the hearing, petitioner made no mention of what "other factor" affecting its business could reasonably be considered as resulting in an inadequate standard of normal earnings for the base period. On brief, petitioner suggested that—

> * * * while taxpayer must admit that the claim does not fall technically within the narrow scope of Section 722 (b) (3) (B) and 722 (b) (4) there is a combination of the two sections which should furnish a standard for relief from the discriminatory tax for the year ended July 31, 1943. To qualify for such relief it would seem that Section 722 (b) (5) is applicable as a combination of the two above quoted sections.

In our opinion, the same factors relied upon by petitioner in its effort to establish eligibility for relief under sections 722 (b) (3) (B) and 722 (b) (4) can not be considered jointly as a new and different

---

[5] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

* * * * * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter * * * shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

basis for relief under section 722 (b) (5). Once those factors have been given full consideration and have been found to be inadequate as grounds for relief under sections 722 (b) (3) (B) and 722 (b) (4), any subsequent reconsideration of these same factors under section 722 (b) (5) would be clearly violative of the statutory prohibition of section 722 (b) (5) that relief granted under that section must "not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein." See *George Kemp Real Estate Co.*, 12 T. C. 943, affirmed on another question, 182 Fed. (2d) 847, certiorari denied, 340 U. S. 852.

Lastly, we think that it is appropriate to point out that although the petitioner's excess profits credit of zero based on income and its credit of $240 based on invested capital may appear to be inadequate, the tax effect of such low credits is mitigated by section 710 (a) (1) (B)[6] which, generally speaking, limits the petitioner's excess profits tax liability to an amount which when added to its income tax liability equals 80 per cent of its surtax net income. The provisions of section 710 (a) (1) (B) were applied in computing the tax paid by petitioner, and it is clear that even had petitioner been able to establish its eligibility for relief under sections 722 (b) (3) (B), 722 (b) (4) or 722 (b) (5), a constructive average base period net income could not be determined on the basis of the present record in an amount sufficiently high to result in any refund of excess profits tax.

Therefore, the respondent properly disallowed the petitioner's claims for relief under the provisions of sections 722 (b) (3) (B), 722 (b) (4), and 722 (b) (5) of the Internal Revenue Code.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*

---

[6] SEC. 710. IMPOSITION OF TAX.

(a) IMPOSITION.—

(1) GENERAL RULE.—There shall be levied, collected, and paid, for each taxable year, upon the adjusted excess-profits net income, as defined in subsection (b), of every corporation (except a corporation exempt under section 727) a tax equal to whichever of the following amounts is the lesser:

(A) 90 per centum of the adjusted excess-profits net income or

(B) an amount which when added to the tax imposed for the taxable year under Chapter 1 (other than section 102) equals 80 per centum of the corporation surtax net income, computed under section 15 or Supplement G, as the case may be, but without regard to the credit provided in section 26 (e) (relating to income subject to the tax imposed by this subchapter).