FOSKETT & BISHOP COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24127. Promulgated February 27, 1951.

*Albert E. James, Esq.,* for the petitioner.
*Irene F. Scott, Esq.,* and *William J. Stetter, Esq.,* for the respondent.

460

OPINION.

BLACK, *Judge:* The question presented is whether petitioner is entitled to any relief from excess profits tax for the calendar years 1941, 1942, 1943, and 1945, under the provisions of section 722 of the Internal Revenue Code, as amended.

A taxpayer is entitled to relief under section 722 if it establishes that its excess profits tax computed without the benefit of section 722 is "excessive and discriminatory" and establishes "a fair and just *amount* representing normal earnings" to be used as a constructive average base period net income. Section 722 (a), Internal Revenue Code.[1]

The normally computed excess profits tax shall be considered to be excessive and discriminatory if the average base period net income is an inadequate standard of normal earnings because of several specified reasons which are given in subsections (1), (2), (3), (4), and (5) of section 722 (b). Petitioner first claims that subsection (b) (2)[2] is applicable to it. To qualify for relief under subsection (b) (2), it must first be shown that "the business of the taxpayer was depressed in the base period * * *." An examination of petitioner's earnings from 1922 through 1939, shows that for these years petitioner suffered an average net loss of $4,713.76, while for the base period years 1936 through 1939, petitioner showed an average profit of $704.45. It, therefore, seems that petitioner has not established its right to relief under section 722 (b) (2), for it would be ignoring the facts to find that petitioner's business was *depressed* in the base period as compared to its earnings for the average long term period 1922 to 1939. *Winter Paper Stock Co.*, 14 T. C. 1312. Cf. *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220.

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

* * * * * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

Petitioner claims, however, that its normal earnings can only be represented by eliminating the actual salaries paid to its officers and substituting therefor a salary constant of $6,000 or $7,500. This would, in petitioner's estimation, represent a fair and just salary for its officers and would, for the most part, convert the losses prior to the base years into profits and would convert all the profits in base years to losses. Respondent has not determined, nor does petitioner suggest, that the larger salaries paid prior to the base years were excessive and unreasonable for the purposes of section 23 (a) (1) (A), I. R. C., and petitioner had the benefit of these deductions even though they might have been, as petitioner implies, a distribution of profits in the form of salaries. To revise petitioner's reported profits on the basis that petitioner suggests would be giving petitioner the benefit under section 722 of something for which it has already received a benefit under another section of the Code and we cannot find any authority for making the adjustment requested by petitioner. Cf. *Clinton Carpet Co.*, 14 T. C. 581; *Park and 46th Street Corporation*, 14 T. C. 588.

Petitioner claims that because Jacques, petitioner's president from 1932 and during the base period, was not aggressive, due partially to the fact that he was suffering from a throat ailment, petitioner did not obtain the business it normally would have obtained under proper management. Petitioner claims that this condition of its management represents a temporary economic circumstance unusual for it under section 722 (b) (2). Even if we were to assume that petitioner's business was depressed in the base period, we would nevertheless hold that petitioner was not depressed because of a temporary economic circumstance as the circumstance of poor management cannot be construed to be an economic circumstance, but rather it is one entirely within the control of the taxpayer. The Bulletin on section 722 of the Internal Revenue Code, part III, page 16, issued by the Commissioner on November 2, 1944, provides:

The term "economic" includes any event or circumstance, general in its impact or externally caused with respect to a particular taxpayer, which has repercussions on the costs, expenses, selling prices, or volume of sales of either an individual taxpayer or an industry. Thus, not every event or circumstance which has an adverse effect on a taxpayer's profits may serve to qualify that taxpayer for relief under subsection (b) (2). First, the temporary and unusual character of the circumstance or event must be clearly established. Second, the cause of the temporary depression must be shown to be external to the taxpayer, in the sense that it was not brought about primarily by a managerial decision. A taxpayer cannot qualify for relief under subsection (b) (2) because its earnings were temporarily reduced in the base period in consequence of its own business policies, internally determined. * * *

The foregoing provision contained in the Bulletin is in harmony, we think, with the general provisions of section 35.722–3 (b) of Regulations 112, printed in the margin.[3]

Petitioner has claimed unaggressive management under Jacques and management drawing excessive salaries under its two prior presidents which indicates that even in petitioner's estimation its management from 1922 to 1939 was never of the caliber petitioner claims it should have been. Thus, the circumstance of poor management cannot even be termed temporary within the meaning of section 722 (b) (2). Cf. *Winter Paper Stock Co., supra.*

On all the facts we hold that petitioner has not shown a right to relief under section 722 (b) (2).

Petitioner next claims relief under section 722 (b) (3).[4] As under section 722 (b) (2) petitioner must establish that its business during the base period was depressed. We have in our discussion of petitioner's claim under section 722 (b) (2) pointed out that petitioner's business was not depressed; however, even assuming again that petitioner's business was depressed, petitioner has not shown that it was depressed by reason of conditions prevailing in an industry of which petitioner was a member and that petitioner was subjected to a profits cycle differing materially in length and amplitude from the general

---

[3] Sec. 35.722–3 (b) *Business depression in base period on account of temporary economic circumstances.*—If the taxpayer establishes that its business was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which the taxpayer was a member was depressed by reason of temporary economic circumstances unusual in the case of such industry, the average base period net income of the taxpayer shall be considered to be an inadequate standard of normal earnings. For the purposes of this subsection a business shall be considered to be depressed if it realized low earnings or operating losses which resulted from such factors as a low volume of output of products or services, from a low volume of sales, from high manufacturing costs, from low sales price, or from a combination of such factors.

Only those economic circumstances which were temporary in the sense that they had little perceptible effect upon the long run prospects of a business, and which affected the taxpayer alone or an industry of which it was a member as distinguished from those economic events which were of a chronic or continuing character or which affected business in general, may furnish a basis for a claim for relief under section 722 (b) (2). An economic circumstance is temporary depending upon the character and nature of such circumstances rather than upon the mere length of time of its existence. Thus, the income of a declining business or industry which was depressed throughout the base period because of economic conditions of a chronic and continuing character which may be expected to depress the earnings of such business for an indefinite period is not an inadequate standard of normal earnings under section 722 (b) (2). * * *

[4] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*
(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.— \* \* \*
\* \* \* \* \* \* \*
(3) the business of the taxpayer was depressed in the base period by reason of conditions generally prevailing in an industry of which the taxpayer was a member, subjecting such taxpayer to

(A) a profits cycle differing materially in length and amplitude from the general business cycle, or

(B) sporadic and intermittent periods of high production and profits, and such periods are inadequately represented in the base period,

business cycle. See *Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894. Petitioner's profits pattern varies from that of its four competitors and any condition which subjected petitioner to a profit cycle differing materially in length and amplitude from the general business cycle was not a result of conditions generally prevailing in the industry, but was due to factors noncyclical such as the poor management which petitioner claims and "The accuracy of managerial judgment is susceptible of no cyclical pattern." *El Campo Rice Milling Co.*, 13 T. C. 775.

At the hearing of this proceeding petitioner stated that subsection 722 (b) (3) (B) "does not seem to have much significance to our facts" and petitioner has not presented evidence relating to this subsection nor has any argument been advanced to support a claim thereunder and we, therefore, hold that section 722 (b) (3) (B) is inapplicable to petitioner.

Petitioner's final claim for relief is under section 722 (b) (5).[5] The basis for petitioner's argument as under (b) (2) is that it is entitled to relief within this subsection because during the base period years petitioner, under its president W. C. Jacques, lost many contracts which under proper management petitioner would have received. Petitioner claims that its allegedly unaggressive management is "any other factor" under (b) (5). Petitioner is aware of the limitations of section 722 (a) regarding the limitations of using post 1939 events or conditions in determining the constructive average base period net income; however, petitioner points to the excellent profit record from 1941 through 1945, which, of course, includes the war years, under George H. Eaton, its president and sole witness in this proceeding, to show what good management would have done for petitioner in the base period. It is petitioner's contention that if during the base period years it had had a manager of Eaton's ability petitioner would have received 20 per cent of the contracts which it bid on but did not receive during the years 1937, 1938, and 1939, and for the year 1936 its gross sales would have been $200,000.

In order for petitioner to be entitled to relief under subsection (b) (5), petitioner must satisfy this Court that its claim is consistent with the principles underlying the other subsections of 722 (b). *George Kemp Real Estate Co.*, 12 T. C. 943, affirmed on another ques-

---

[5] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.— &ast; &ast; &ast;

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

tion 182 Fed. (2d) 847, certiorari denied, 340 U. S. 852. We believe that to hold petitioner eligible for relief for what we shall for the moment consider to be unaggressive management would be inconsistent with subsection (b) (4). Subsection (b) (4) would establish petitioner's eligibility for relief if petitioner changed the management of its business *during* or *immediately prior to the base period.* Cf. *7–Up Fort Worth Co.,* 8 T. C. 52. However, petitioner did not change its management until after the base period and to consider what other management would have done during the base period would be speculative and would be tantamount to changing the character of petitioner's business during the base period by substituting new management for petitioner in the base period which petitioner itself did not do. Such a result we do not think is authorized by section 722 (b) (5). We, therefore, hold that petitioner is not eligible for relief under section 722 (b) (5).

In our findings of fact we have set out the constructive average base period net incomes submitted by petitioner to cover varying circumstances. In *East Texas Motor Freight Lines,* 7 T. C. at page 587, we set out the primary requirements of proof for a taxpayer to get relief under section 722. In that case we said:

Under the statute petitioner must establish (1) that the tax computed without the benefit of section 722 results in an excessive and discriminatory tax and (2) a fair and just amount representing normal earnings to be used as a constructive average base period net income. If petitioner establishes these two requirements, then the tax shall be determined by using such constructive average base period net income in lieu of the actual average base period net income otherwise determined under the statute. In determining (2) no regard shall be had to events or conditions affecting petitioner, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, with certain exceptions not material here.

As we have already pointed out, petitioner, in the instant case, has not proved (1) above, that is to say, that it has statutory grounds for relief. Not having established grounds for relief under either of the subsections contained in section 722 (b), no useful purpose would be served in discussing the several constructive average base period net incomes submitted by petitioner. We, therefore, omit any discussion with respect thereto.

Because petitioner has not shown that its excess profits tax computed without the benefit of section 722 is excessive and discriminatory, petitioner is not entitled to an excess profits tax credit greater than the one computed under section 714 and we, therefore, hold that respondent properly disallowed petitioner's claim for relief under the provisions of section 722 (b) (2), 722 (b) (3), and 722 (b) (5), I. R. C.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*