INDUSTRIAL YARN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11742. Promulgated March 30, 1951.

*Jacquin D. Bierman, Esq.,* and *Richard S. Helstein, C. P. A.,* for the petitioner.

*Thomas R. Wickersham, Esq.,* and *Aaron S. Resnik, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge:* In computing its excess profits taxes for the taxable years 1941 and 1942, petitioner used an excess profits tax credit based on invested capital which credit was higher than its excess profits

credit based on income. Petitioner now seeks to show that it is entitled to reconstruct, under the provisions of section 722 (b) (2) and (b) (4),[1] an average base period net income so as to entitle it to a greater excess profits tax credit than that already available to it.

Petitioner's first contention is that it made a change in its character of business immediately prior to the base period years within the meaning of section 722 (b) (4). The substance of the petitioner's claim is that prior to the alleged change of the character of its business it was acting as a sales agent for grey or natural cotton yarn, and that after the change it specialized in the sale of colored cotton yarn. Petitioner contends that as a result of the change it had new customers, new suppliers, a new sales policy, new competitors, and a higher earning potential. It was incumbent upon the petitioner to show that it made a change in the *character* of its business and that that change occurred during or *immediately* prior to the base period years.

The record as a whole is entirely unconvincing, and in the aggregate, does not prove that petitioner made a substantial change in the character of its business.

Even were we to conclude that there had been a substantial change in the character of the business, petitioner has not proved the time when such a change took place. It has not demonstrated that it took place "immediately prior to the base period," as required by the statute.

The sales records which might have tended to establish such a fact were destroyed by petitioner in 1947, subsequent to the filing of its application for relief and the petition in this case. In the present state of the record, declarations on the part of petitioner's officers that

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

* * * * * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of non-borrowed capital to total capital, * * *

* * * * * * *

its sales of colored yarn prior to the base period were "limited and slight" find little corroboration in the proven facts.

Moreover, there is no evidence that under trade practice or custom, commission selling of colored yarn is greatly different from selling grey yarn. Petitioner sold some colored yarn as early as 1927 and each year thereafter. It advertised in trade publications in 1932 that it was in the colored yarn business. Petitioner's president testified that it was decided in 1934 or 1935 to emphasize colored yarn.

We conclude that petitioner has not established that there was a qualifying change "immediately prior" to the base period years within the meaning of section 722 (b) (4). Accordingly, petitioner is not entitled to any relief under that subsection of the Code.

There remains petitioner's contention that it has qualified for relief under section 722 (b) (2). The substance of the petitioner's claim under this provision of section 722 is that its earnings were adversely affected by a temporary and unusal depression of prices in the cotton yarn industry in 1938 and 1939. It should be pointed out initially that petitioner's average earnings were, in fact, greater in the base period than in the years 1922 to 1939. See *Foskett & Bishop Company*, 16 T. C. 456, where we said:

* * * An examination of petitioner's earnings from 1922 through 1939, shows that for these years petitioner suffered an average net loss of $4,713.76, while for the base period years 1936 through 1939, petitioner showed an average profit of $704.45. It, therefore, seems that petitioner has not established its right to relief under section 722 (b) (2), for it would be ignoring the facts to find that petitioner's business was *depressed* in the base period as compared to its earnings for the average long-term period 1922 to 1939. *Winter Paper Stock Co.*, 14 T. C. 1312. Cf. *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220.

The basic facts in the present case bear a striking similarity to the situation which obtained in the above quoted excerpt. This fact alone apparently would require us to find that the petitioner's business was not depressed in the base period years.

Furthermore, petitioner's basic premise on this issue does not commend itself to us as being sound. It contends there was a depression in cotton prices in 1938 and 1939 caused by a "record" cotton crop in 1937, and a decrease in cotton consumption in 1938. In our judgment, this fact, if proven, would not be *ipso facto* a temporary economic event unusual in the case of petitioner's business within the meaning of that phrase as used in section 722 (b) (2). It is not unusual for a cotton crop to vary in size from year to year. The fortuitous circumstances that 1937 may have produced a cotton crop of extraordinary size does not, of itself, create an abnormality in petitioner's business of the character sufficient to bring petitioner within the scope of the cited section. We are not convinced by the evidence of record that petitioner's income was adversely affected in any appreciable

degree by the size of the 1937 cotton crop. It would appear that petitioner's income was more dependent upon the success of its officers as yarn salesmen rather than the current market quotations for raw cotton or cotton yarn. This factor would apply with equal force in all years.

We therefore hold that the petitioner has not shown that its business was depressed during the base period years within the meaning of section 722 (b) (2).

Inasmuch as petitioner has failed to establish that it qualified for relief under section 722 (b) (2) or (b) (4), it is unnecessary for us to discuss its reconstruction of base period income under such subsections.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*