## General Metalware Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 24264, 29612.    Promulgated September 14, 1951.

*James S. Delehanty, Esq.*, for the petitioner.
*Richard L. Greene, Esq.*, for the respondent.

## OPINION.

JOHNSON, *Judge:* Petitioner claimed relief under each of the subsections of section 722 (b) of the Internal Revenue Code. Respondent completely rejected such claims. Petitioner now concedes the nonapplicability of subsections (b) (1), (b) (2) and (b) (3) and claims relief solely under subsections (b) (4) or (b) (5) of section 722. Section 722 (b) (4) provides, in so far as material here, that the excess profits tax imposed "shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because * * * the taxpayer * * * during * * * the base period * * * changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business." It further provides that "the term 'change in the character of the business' includes * * * a difference in the capacity for production or operation" of the business and that "any change in the capacity for production or operation of the business consummated during any taxable year ending after

December-31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business."

Petitioner contends that it is entitled to relief under this section by reason of the developing and marketing of an all-glass poultry drinking fount. Petitioner contends that though it did not sell the all-glass fount during the base period, the facts show that it was committed prior to January 1, 1940, to a course of action resulting in a change in its capacity for operation and that thus under the statute it must be deemed to have changed the character of its business on December 31, 1939. We do not agree. The Treasury Department Bulletin on section 722 explains the phrase "capacity for operation" as "intended to afford * * * the right to relief because of a change in character resulting from a difference in the physical capacity to do business." We do not think petitioner has shown that its "physical capacity" to do business was changed by the introduction of the all-glass fount or, if there was such a change, that petitioner was committed to it prior to January 1, 1940.

The facts show that petitioner began selling the all-glass fount in September 1940 and that sales of it amounted to $51,399.91 and $139,874.06, respectively, during the fiscal years ended July 31, 1941, and July 31, 1942. At the same time sales of founts other than the all-glass fount increased from a base period average of $17,246 annually to $55,246.35 and $52,537.18, respectively, in the fiscal years ended July 31, 1941, and July 31, 1942, and sales of all products increased from a base period average of $852,982 annually to $1,131,610 and $1,625,473, respectively, in the fiscal years ended July 31, 1941, and July 31, 1942. These facts show that petitioner's sales of all founts and all products increased greatly under the impact of the war economy in the excess profits taxable years. Petitioner has not shown that any increase or expansion of its facilities occurring in the excess profits taxable years was not due to the favorable marketing conditions existing for all of its products in those years rather than to the introduction of the alleged new product, the all-glass fount.

Actually, petitioner's claim that the all-glass fount was not a mere technological improvement upon founts then in existence but something completely new and different seems unjustified. Petitioner had during the base period and prior thereto sold no less than 22 different styles of poultry founts, including one which was all glass except for the metal clips which held the Mason jar in place, changing its models as one of petitioner's witnesses described it, "like ladies' hats."

But even if we label the all-glass fount a "new" product, it was not a product which was sold during the base period and, in fact, changes

in its design occurred subsequent to the base period. All that had occurred prior to the close of the base period was that one glass manufacturer, Hazel Atlas Glass Company, had agreed to manufacture for petitioner an all-glass base fount and another glass manufacturer, Oakes Manufacturing Company, with nationwide distribution from whom petitioner had formerly purchased, had assured petitioner that it would distribute the all-glass fount when manufactured. We fail to see how petitioner was committed in any way to a change in its own physical capacity for operation by these assurances of what one glass manufacturer would manufacture for it and another glass manufacturer would sell for it. Petitioner has not shown that the facilities of both these glass manufactures and others were not available to it throughout the base period.

Furthermore, petitioner's contention that it established nationwide distribution with the sale of the all-glass fount to the Oakes Manufacturing Company is controverted by the fact that petitioner had sold products to Sears Roebuck & Company and Montgomery Ward & Company, both having national distribution, prior to the close of the base period. Moreover, Montgomery Ward & Company bought the glass fount from petitioner after the close of the base period; so it is apparent that petitioner was able to obtain nationwide distribution for that product without the "commitment" to Oakes Manufacturing Company.

Finally, even if we were to assume *arguendo* the existence of a qualifying factor under section 722 (b) (4), it would still be our conclusion that petitioner is not entitled to relief under that section, for failure to establish "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income," as required by section 722 (a), I. R. C. Petitioner, having used the invested capital method of computing its excess profits tax credit, must show a constructive average base period net income which will result in an excess profits credit greater than that computed on the basis of invested capital and allowed by the respondent. *Monarch Manufacturing Co.*, 15 T. C. 442.

Petitioner filed an application for relief in respect to at least one of the excess profits taxable years which was signed by its president, M. T. Bentzen (since deceased). In this application it was estimated, under the 2 year push-back prescribed by section 722 (b) (4), that petitioner would by the end of the base period have reached total sales of the all-glass fount of $150,000. One of petitioner's witnesses stated that M. T. Bentzen "was very acute on sales matters and quite an expert on poultry stuff" and that his judgment of sales possibilities of the new fount was partly based upon a favorable reaction of one potential distributor, the Oakes Manufacturing Company. Petitioner also contends that an estimate of $150,000 in sales of the new

fount is to some extent supported by the fact that in the taxable year ended July 31, 1942, petitioner had total sales therefrom of $139,874.06.

However, there appears no warrant in the record for concluding that petitioner, given a 2 year push-back under section 722 (b) (4) would have had sales of $150,000 from the new fount in the second year of its operations in respect thereto. Furthermore, any attempt to support the estimate by reference to the sales actually realized in the fiscal year ended July 31, 1942, is in violation of the statutory prohibition contained in section 722 (a) regarding post-1939 data. Also, sales of approximately $139,000 under the war economy hardly support an estimate of $150,000 under base period conditions.

Having arbitrarily chosen a gross sales figure of $150,000, petitioner then arbitrarily determined that it would have had a net profit ratio of 30 per cent of gross sales, and, accordingly, indicated that the net earnings attributable to the new glass poultry fount in the last base period year would be $45,000. It is to be noted that petitioner earned an average *gross profit* ratio on all fount sales in the base period of only 19.27 per cent and on total sales of all products in the base period of only 16.13 per cent. Its average *net profit* ratio on total sales of all products in the base period was only 2.23 per cent.

Having, as we have indicated, arbitrarily reached the net profit figure of $45,000 on sales of the new glass poultry fount in the last base period year, petitioner then arbitrarily stated that such earnings would have likewise "been normal for years prior thereto," i. e., that the amount of $45,000 would represent the average net profit attributable to this source for the entire base period. Such an assumption, that the same amount of net profit would be earned in each year of the base period as would be realized in the last year, is contrary to accepted principles. *Lamar Creamery Co.*, 8 T. C. 928, 942, 943; Treasury Department Bulletin on section 722, part V (II) (B) (3) (b) (vi).

We conclude from the above that, even conceding what we do not concede—the existence of a qualifying factor under section 722 (b) (4)—nevertheless petitioner has wholly failed to establish a fair and just figure to be used as a constructive average base period net income, and is accordingly not entitled to relief under section 722 (b) (4).

Though petitioner claims relief under section 722 (b) (5), it fails to claim at any point in these proceedings any other qualifying factor than that already claimed under section 722 (b) (4). In such case it is unnecessary for us to consider petitioner's eligibility for relief under section 722 (b) (5). *Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894; *Wisconsin Farmer Co.*, 14 T. C. 1021.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*