OPINION. Murdock, Judge: The petitioner acquired all of the properties of the predecessor corporation, and a part of the consideration for the transfer of those properties was the transfer to the predecessor of all of the outstanding stock of the petitioner. The petitioner thus qualifies as an acquiring corporation and the predecessor as a qualified component corporation under section 740 (a) (1) (A) and (b) (1) for whatever benefit the taxpayer may derive therefrom under section 722 (e) (2). The predecessor was the taxpayer for 1941 but it has not filed a petition with the Court. The petitioner mentioned all of the five sub-paragraphs of section 722 (b) in its applications for relief but now does not press any claims under sub-paragraphs (1) and (5). Its claim under (2) is that its business was depressed during the base period by unusually low cotton prices and by an unusual reduction of its bank credits. It contends, as an alternative to the above claim, that its business was depressed within the meaning of section 722 (b) (3) (B) “by reason of conditions generally prevailing in its industry resulting in the base period inadequately representing its periods of normal or high profits.” The remaining contention of the petitioner is that it changed the character of its business during the base period within the meaning of section 722 (b) (4) by the introduction in 1938 of a new product, the Fall River Bundle. These contentions all go to the question of whether the petitioner qualifies for relief under one or more of the provisions of section 722 (b). The business of the petitioner was depressed in the base period, although much less so than it was during the years 1930 through 1932. The petitioner has failed to show the extent, if any, to which the base period depression was due to the decline in cotton prices or that that decline was temporary. The losses might have been due to other factors. Cf. Trunz, Inc., 15 T. C. 99, 104. The banks restricted the credit of the petitioner primarily because of their objections to business policies practiced by the petitioner, not because of unusual economic conditions over which the taxpayer had no control. Consequently, the restriction can not be regarded as a temporary economic circumstance within the meaning of section 722 (b) (2). Cf. Foskett & Bishop Co., 16 T. C. 456; Avey Drilling Machine Co., 16 T. C. 1281. The record is not clear as to the extent of the effect of the restricted credit on the business of the petitioner. Any change in the business due to the introduction of the Fall River Bundle was not reflected in an increased level of normal earnings directly attributable to the change. Cf. Wisconsin Farmer Co., 14 T. C. 1021; Roy Campbell, Wise & Wright, Inc., 15 T. C. 894. Regulations 112, section 35.722-3 (d). The record leaves the Court in serious doubt as to any possible benefit from the “push-back rule.” The extent to which the restricted bank credit affected this new product is not clear. The alternative contention of the petitioner is argued superficially and is not borne out by the evidence. However, this record would not justify the granting of any relief even if the petitioner clearly qualified for relief as it claims, under two of the subparagraphs of section 722 (b), i. e., even if the base period depression was due in part to low cotton prices and to the credit restriction and the Fall River Bundle was a profitable change. The excess profits net income of the petitioner for each of the four base period years, after drastic salary reductions, was a minus quantity, the average of which was $53,872.36. The plus average for the ten preceding years was $51,577.34. The petitioner would go back further to disclose more favorable figures. Its excess profits tax credits were computed on the basis of invested capital. Those credits ranged from a low of about $108,000 in 1944 to a high of about $241,000 in 1941 for which year it also had a carry-over from 1940 of about $200,000. Obviously, the petitioner will not receive relief for any year under section 722 unless it can show a sufficient amount of constructive average base period net income to produce a credit in excess of the large credits which it has received under the invested capital method. Its proposed reconstruction is not supported by adequate evidence. Its record of past earnings and prospects of future earnings, as shown by this record, do not indicate that it is entitled to constructive average base period net income anywhere near sufficient to give it relief under the claims now made. Reviewed by the Special Division. Decision will be entered for the respondent.