HUGUET FABRICS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.*

Docket No. 7292.   Promulgated June 23, 1952.

*Howe P. Cochran, Esq.,* and *Margaret F. Luers, Esq.,* for the petitioner.

*T. R. Wickersham, Esq.,* for the respondent.

---

*Findings of Fact and Opinion vacated by order dated August 21, 1952, reviewed by the Special Division.

606

608

## OPINION.

Hill, *Judge:* The issue presented is whether the petitioner is entitled to any relief from excess profits tax for its fiscal year ended September 30, 1941, under the provisions of section 722 of the Internal Revenue Code. In order to be entitled to relief under the statute, petitioner must establish (1) that the tax computed without the benefit of section 722 results in an excessive and discriminatory tax, and (2)

what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income.[1]

Although the petitioner employed the invested capital method of computing its excess profits credit for the fiscal year here involved, it was entitled to employ the average base period net income method in computing this credit. Accordingly, it is not only entitled, but required, to proceed under section 722 (b) of the Code. *Toledo Stove & Range Co.*, 16 T. C. 1125. It must prove, therefore, within the scope of section 722 (b), that its average base period net income is an inadequate standard of normal earnings.[2]

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that in the case described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

[2] (b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer,

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry.

(3) the business of the taxpayer was depressed in the base period by reason of conditions generally prevailing in an industry of which the taxpayer was a member, subjecting such taxpayer to

(A) a profits cycle differing materially in length and amplitude from the general business cycle, or

(B) sporadic and intermittent periods of high production and profits, and such periods are inadequately represented in the base period,

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished.

In support of the allegations that the respondent erred in denying petitioner relief from excess profits tax for the fiscal year here involved, the petition contains general allegations of fact which indicate that it is petitioner's position that such events occurred within its experience which qualify as one or more of the factors enumerated in each of the paragraphs (1) to (4), inclusive, of section 722 (b), and which constitute, within the purview of paragraph (5) of that section, factors other than those enumerated in paragraphs (1) to (4), indicating that petitioner's average base period net income is an inadequate standard of normal earnings. Petitioner also relied on all five paragraphs of section 722 (b) in its application for relief on Form 991.

From our examination of the record and briefs, however, it appears that petitioner's case has been developed in such a manner as to indicate that it has placed its main reliance on paragraph (4) of section 722 (b), and with respect to that provision of the Code it is petitioner's main contention that it changed the character of its business during its base period by going into a *new and different market* with a *new and different product*. Accordingly, we will first consider this contention.

Petitioner's base period extended from October 1, 1936, to September 30, 1940. Accordingly, within the meaning of section 722, it is entitled to rely on any change in the character of its business which took place prior to October 1, 1940. *Wisconsin Farmer Co.*, 14 T. C. 1021.

As our findings of fact indicate, while the petitioner did some experimental work with respect to the use of the newly developed nylon in the manufacture of broad woven nylon fabrics in the latter part of the calendar year 1939 and the early part of the calendar year 1940, until the last quarter of the last year of the base period the only fabrics it manufactured for sale to its customers were woven out of silk or a combination of silk and rayon yarn (it also manufactured a relatively insignificant quantity of novelty woolen items). Beginning in July 1940, however, petitioner went beyond the experimental stage in the development of nylon fabrics and actually

---

Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

produced nylon fabrics for sale to its customers during the last quarter of its base period. That petitioner took this step is established by the facts stipulated, which indicate the petitioner made its first purchase of nylon yarn in sizeable quantities during that period (1,029 lbs. in July: 1,684 lbs. in August; and 2,037 lbs. in September), and that its first sales (net) of nylon fabric were made during the same period ($842.96 in July, $5,810.28 in August, and $10,346.45 in September).

Although it is not too clear from the record, we believe that the petitioner has established that there were some differences which this nylon fabric possessed which distinguished it from petitioner's silk or combination of silk and rayon fabrics. These differences were specifically referred to by petitioner's general manager as the "high elongation" and "expansion qualities" of the nylon fiber.

The main elements of the alleged change relied on by the petitioner are that it sold these new nylon fabrics to new customers, manufacturers of ladies' brassieres, girdles, and other foundation garments, an outlet for its products which petitioner had never previously employed since its silk fabrics were not adaptable to such a use, and that it sold these fabrics to such manufacturers directly, thus eliminating jobbers' commissions.

We believe that the record does not indicate that such a complete change as claimed by the petitioner took place *prior to September 30, 1940.* The stipulation shows that petitioner's net sales of all fabrics for the fiscal year ended September 30, 1940, amounted to $1,047,381.93. Net sales of nylon fabric amounted to $16,999.69, which figure is necessarily included in the total net sales figure. However, the stipulation indicates that all the sales of all fabrics were made to petitioner's customers who purchased its silk fabrics, all of whom petitioner's general manager testified were jobbers. The stipulation also indicates that the first sales to the Bali Brassiere Company were made in October 1940, and the testimony of petitioner's general manager appears to indicate this was the first company which became interested in employing petitioner's nylon fabric in the manufacture of undergarments. While these stipulated facts are in conflict with the testimony of petitioner's general manager, who testified that all of petitioner's sales of nylon fabric for the fiscal year ended September 30, 1940, were made directly to manufacturers of undergarments, the facts stipulated must prevail. Furthermore, the evidence introduced is insufficient to establish that the new fabrics could not be used for any purpose other than the manufacture of undergarments.

From a consideration of all the evidence presented, we believe that the petitioner has not established as a fact that it went into the undergarment field or that it sold its product directly to manufacturers of undergarments during the base period.

We have not overlooked the fact that the manufacture of nylon fabrics for the first time during the base period was a change. However, not every change is sufficient to satisfy the requirements of the statute. As we stated in *Wisconsin Farmer Co., supra,* at page 1028:

\* \* \* While the statute does not completely define what shall constitute a change in the character of a business, we are willing to accept the general principles outlined in Regulations 112, section 35.722-3 (d), where it is stated:

A change in the character of the business for the purposes of section 722 (b) (4) must be substantial in that the nature of the operations of the business affected by the change is regarded as being essentially different after the change from the nature of such operations prior to the change. No change which businesses in general are accustomed to make in the course of usual or routine operations shall be considered a change in the character of the business for the purposes of section 722 (b) (4). \* \* \* A change in the character of the business, to be considered substantial, must be reflected in an increased level of earnings which is directly attributable to such change.

The nature or character of a taxpayer's business is at all times subject to many changes which do not necessarily serve to increase the earnings of the business but which in fact may actually result in substantial losses. However, the occurrence of a change in the character of a taxpayer's business for the purposes of securing relief under section 722 is important only if the change directly results in an increase of normal earnings which is not adequately reflected by its average base period net income computed under section 713. It is clear that the critical consideration in granting relief to the taxpayer in such cases as *East Texas Motor Freight Lines, 7-Up Fort Worth Co.,* and *Lamar Creamery Co., supra,* was the fact that the change was deemed sufficiently important in the taxpayer's business, as reflected by the increase in its earning capacity resulting from the change, to render its average base period net income inadequate as a standard of normal earnings for the entire base period.

While the evidence indicates there were certain differences in the petitioner's nylon product as distinguished from its silk product, the evidence also indicates that both were sheer fabrics and both were classified as chiffons, marquisettes, and mousselines. The evidence presented does not indicate whether or not the nylon fabrics may have been competitive with, or substitutive for, petitioner's silk fabrics and the petitioner introduced no evidence with respect to costs of producing the new fabrics, nor with respect to the market for this product. We must conclude that insufficient evidence was introduced to establish that the change to manufacture nylon fabric by itself is sufficient to qualify as a substantial change within our understanding of the requirements of section 722.

Petitioner introduced no evidence with respect to any change in management or increase in capacity, nor has any issue been raised that it commenced business during or immediately prior to the base period and that such a fact affected its earnings. We hold that the petitioner has not shown the existence of any of the factors enumerated in paragraph (4) of section 722 (b).

With respect to petitioner's claim under the factors contained in paragraphs (1) through (3) and paragraph (5) of section 722 (b), the evidence indicates only that the petitioner's average earnings were very low during the base period, that it suffered a serious loss in 1938, and that its decline in earnings was due in large part to the competition from rayon fabrics and also to the fact that the demand for such luxury items as were manufactured from petitioner's fabrics was very low. As far as we can gather from the record the inroad made into the silk fabrics industry by rayon fabrics was a permanent one, not a temporary one, and rayon replaced part of the demand for silk.

Such evidence does not prove that there was any peculiar or unusual event in the experience of the petitioner either immediately prior to or during the base period, as required by paragraph (1) of section 722 (b), or that there were any temporary circumstances unusual in the case of the petitioner which depressed its business as required by paragraph (2) of that section, or what were the conditions which were generally prevailing in petitioner's industry as required by paragraph (3). We have repeatedly held that the mere existence of a low level of earnings during the base period is insufficient to qualify within the provisions of section 722. *Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894; *Trunz, Inc.*, 15 T. C. 99; *Foskett & Bishop Co.*, 16 T. C. 456. And likewise precluded is any consideration of paragraph (5) since no evidence was introduced relating to factors other than those enumerated in paragraphs (1) to (4). Cf. *George Kemp Real Estate Co.*, 12 T. C. 943.

Petitioner has not proved that the average base period net income was an inadequate standard of normal earnings as required by section 722 (b). Accordingly, we believe that there is no need for us to consider, 'nor purpose in a discussion of, a reconstruction of the base period earnings, and we hold that the petitioner is not entitled to relief from excess profits tax in accordance with the provisions of section 722 of the Code.

There is contained in the petition an assignment of error which reads as follows:

The Commissioner of Internal Revenue erred in permitting the Internal Revenue Agent in Charge to usurp the duties and authority delegated by the Congress to the Commissioner of Internal Revenue.

In support of this assignment of error there was alleged in the petition the following facts:

Congress delegated to the Commissioner of Internal Revenue the authority to determine relief under Section 722 of the Internal Revenue Code. Petitioner is informed and believes that the said Commissioner is permitting others to usurp the duties delegated to him by the Congress, in that he permits his servants and agents to deny relief under Section 722 of the Internal Revenue Code.

These allegations were denied by respondent's answer.

We do not fully comprehend the meaning of the above assignment of error. Apparently it is petitioner's position that the procedure employed by the respondent in denying it relief went beyond the provisions of the Code relating to excess profits tax relief. No evidence was introduced with respect to this allegation, nor was any mention of it made on brief. Accordingly, we consider it to have been abandoned by petitioner.

Reviewed by the Special Division.

*Findings of Fact and Opinion vacated, August 21, 1952.*