LIBERTY FABRICS OF NEW YORK, INC. (FORMERLY LIBERTY LACE AND NETTING WORKS), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32828.    Filed June 13, 1957.

*Jay O. Kramer, Esq., S. Walter Kaufman, C. P. A.,* and *Joseph J. Bryer, Esq.,* for the petitioner.

*Arthur N. Mindling, Esq.,* for the respondent.

652

654

656

OPPER, *Judge:* On first impression it is reasonable to assume that petitioner qualifies for relief under section 722 (b) (4). We find it unnecessary to consider this question nor to determine whether this is so by reason of the increased capacity furnished by the 2 new machines and the possible addition of trained employees that might have resulted; or whether to predicate that conclusion on the development of a new product—the Lastex net. See *Davenport Hosiery Mills, Inc.,* 28 T. C. 201. Even if we make these assumptions, it is impossible to grant petitioner any relief.

This results from an analysis of its reconstructed income. The only reconstruction submitted by petitioner must be discarded for a number of reasons. The year 1936 is treated as though the increased capacity existed throughout the year, whereas even if the installation had been made 2 years earlier, under the so-called push-back rule,[2] the use of the machines could not have been for more than 8 months of that year. The cost of goods sold is computed throughout on petitioner's entire product, whereas the cost of the Lastex material employed in fabricating the net was considerably greater. The deductions taken in arriving at the reconstructed net income are not adequate. Additional compensation to officers was merely estimated and an effort to apply to 1936, as an example, the contractual formula agreed upon between petitioner and the interested officers indicates that the estimate is considerably too low. Certain other deductions, like bad debts, have been omitted entirely although it must be assumed that larger business would cause the creation of greater indebtedness from customers with at least the possibility of an increased bad debt deduction. And there are other omissions and inaccuracies in the detail of the reconstruction.

But a greater difficulty is the formula adopted for reconstructing the increase presumptively available during the base period. Petitioner's calculation is that the net income for 1939 would have been increased by some $27,000 over its actual income. This is the result

---

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

  (b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—* * *

    (4) * * * If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had * * * made the change in the character of the business two years before it did so, it shall be deemed to have * * * made the change at such earlier time. * * *

of an approximate 25 per cent theoretical increase in productivity in the manufacture of Lastex net. It is apparent that if this 25 per cent increase were applied to petitioner's actual Lastex net production for the remaining 3 base period years it would, along with the other corrections, fail to justify a constructive average base period net income greater than the amount now granted petitioner under the provisions of section 713. Instead of this, petitioner has reconstructed its production on an index derived from the national business experience (Series C) thereby arriving at theoretical production for the first 2 base period years greatly in excess of a 20 per cent, or even of a 25 per cent, increase over its actual operation. Some such computation would be necessary to justify any relief because petitioner's actual experience shows that its Lastex net production for the earlier years was much less than that for 1939.

All of petitioner's reconstructed figures are based on this essentially unfounded estimate, that at the end of 1939 it had not only failed to reach the earning level it would have if the change had been made 2 years sooner but that this earning level was so far from having been reached that it is necessary to increase the actual 1939 production by some 25 per cent before the appropriate constructive production would be attained. We are unable to concur in this conclusion.

There is no convincing evidence that if the increase in capacity had occurred 2 years sooner petitioner's level of operations would have expanded not only by the assumed 20 per cent increase in capacity but, in addition, by an increase of 25 per cent over the end of the base period. By the end of 1939 the new machines had already been in operation for some 1 year and 8 months. The improvement in petitioner's physical plant was thus complete by the end of the base period.

We are willing to assume that some increase in the skill, or even in the number, of the "twist hands" operating the machines might have been achieved by 2 years of additional experience but there is no evidence that the machines themselves were not being used as great a proportion of the time as was practical.[3] We cannot hence attribute to this possible increase in efficiency any such theoretical expansion in production as petitioner assumes. Based on the actual figures during the period the machines were in active operation, the highest figure for a presumptive increase in production due to greater experience by the end of the base period, even under the push-back rule,[4] would not be more than some 5⅓ per cent.

---

[3] On the contrary, we have found as a fact, at petitioner's request, that "[f]ull production at maximum theoretical capacity, week after week, on petitioner's bobbinet machines during the base period could not have been expected for a number of reasons, including machinery breakdowns, shortages of good quality yarn, shortages of skilled labor, respringing for different quality fabrics, use of regular machines for preparing samples, and annual employee vacations. * * *"

[4] See footnote 2.

Use of this proportionate increase for the years when the machines were in operation, together with a backcast combining the Series C index with the assumed increase in capacity for the earlier years of the base period, fails to produce a figure sufficient to exceed or even approach petitioner's base period income under the provisions of section 713 (f). *Irwin B. Schwabe Co.*, 12 T. C. 606; *Wentworth Military, Scientific, Etc. Co.*, 22 T. C. 721; *Trunz, Inc.*, 15 T. C. 99. Even if we assume all other factors of qualification in its favor, we still, as has been said, fail to reach a constructive average base period net income great enough to justify any relief. Petitioner has not established that the tax otherwise computed "results in an excessive" or "discriminatory tax."

For the reasons stated, we find it unnecessary to decide whether, in fact, petitioner does qualify or whether, in fact, any increase for greater efficiency or the 2-year push-back should be assumed. Even if these matters are disposed of in petitioner's favor, no relief could be granted.

The petition includes a prayer for relief under section 722 (b) (5). No mention of this was made in the original applications. See *Telfair Stockton & Co.*, 21 T. C. 239. In view of the lack of any arguments in the briefs, it is reasonable to assume that this part of the controversy has been abandoned. In any event, no grounds for relief under section 722 (b) (5), other than those already considered under section 722 (b) (4), have been advanced and petitioner would not be entitled to any more relief under section 722 (b) (5) than it would receive on the assumption we have made that it qualifies under section 722 (b) (4). *General Metalware Co.*, 17 T. C. 286, 293; *Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894, 901.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*