SINGER BROS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21648.    Promulgated November 24, 1950.

*Jay O. Kramer, Esq.*, and *S. Walter Kaufman, C. P. A.*, for the petitioner.

*J. Nelson Anderson, Esq.*, for the respondent.

686

688

690

OPINION.

DISNEY, *Judge:* The petitioner seeks relief from excess profits taxes under section 722 of the Internal Revenue Code, primarily under subsection (b) (4). At the trial the issue was limited to that subsection and on brief only subsection (b) (4) is quoted as being involved. However, petitioner's brief also states that since subsection (b) (5) is "a 'catch-all' provision which has not yet been fully defined by the Tax Court, the way is open in this case for the Court to grant relief under Section 722 (b) (5) if it finds the situation requires." We set forth in the margin the pertinent portions of the basic section 722 (a), (b) (4), and (b) (5).[3]

The gist of petitioner's position is that it "commenced business or changed the character of the business" during the base period within section 722 (b) (4) either because of or at the time of the incorporation in May 1936, or because about 1938 the trustees released the credit restrictions upon petitioner's business.

Considering the conclusions to which we have come, as set forth below, we find it unnecessary to pass upon the question as to whether there was in fact commencement or change of character of the business, for, as the text of the statute shows, the petitioner must not only demonstrate, on its theory, that there was such commencement or change in character of the business but must also demonstrate that "the

---

[3] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. * * *

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

average base period net income does not reflect the normal operation for the entire base period of the business." Under the language of section 722 (a) relief is given only to the taxpayer who "establishes * * * what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income * * *." It is stipulated that petitioner's average base period net income computed under section 713 (e) for the fiscal years here involved is $5.274.77 and that amount is used as petitioner's average base period net income in the final determination of its excess profits tax liability.

It is, therefore, incumbent upon petitioner, assuming that it shows commencement of the business or change in character of the business, to reconstruct an average base period net income of more than $5,274.77—otherwise it would not be shown that its "average base period net income does not reflect the normal operation for the entire base period of the business."

Petitioner has failed to set up such reconstruction and to make the necessary showing. The petitioner presents two reconstructions. The first, "as a result of a two year push back," shows constructive average base period net income of $12.684. The second, arrived at by applying the industry index for candy jobbers, used in petitioner's protest, to the petitioner's sales for the calendar year 1939, which is asserted to be normal, shows constructive average base period net income of $9.601. Petitioner on brief says that it is entitled to use one of the two figures. We consider the two reconstructions separately:

The first, under the "push back" rule, must be rejected. The "push back" rule arises from the following language in section 722 (b) (4) :

* * * If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. * * *

Not only does the petitioner fail to show that its business did not reach by the end of the base period the earning level which it would have reached if the taxpayer had commenced business or made a change in the character of the business 2 years before it did so, but petitioner's net earnings were greater, in the fiscal years ending in May 1937 and 1938 than they were in the following 2 years. Petitioner has misunderstood the effect of the statutory language above quoted. As shown in the facts, and as stated in the petitioner's brief, in its first reconstruction the petitioner threw the actual sales volume for the fiscal year ended April 30, 1939, back 2 years and then followed the actual rate of increase, in addition to making certain adjustments, that is, adding $7,200 to sales figures because of abandon-

ment of Staten Island, adjusting for expenses which would be affected by added sales, and adjusting for purchase discounts. This procedure is not justified by the "push back" rule. In addition, petitioner's first reconstruction can not be accepted, for the following reasons: (a) Petitioner adds in each year $7,200 as alleged loss in sales because the trustees abandoned Staten Island upon petitioner's incorporation, but there is no evidence in the record to sustain the $7,200 figure. The evidence is that the Staten Island territory abandoned was of doubtful value. There is none as to amount of sales in that territory. Nothing in the record affords a basis for adjustment at $7,200 or any other figure because of the Staten Island abandonment. (b) The adjustment for loss of purchase discounts as to Schrafft's was based upon the ratio of purchase discounts earned to payments made to Schrafft's for the fiscal year ending April 30, 1943. Since section 722 (a) specifically provides that in determining constructive average base period net income "no regard shall be had to events or conditions * * * occurring or existing after December 31, 1939, * * *," it is obvious that the reconstruction, based in part upon the prohibited facts, is vitiated. (c) Likewise the petitioner made adjustment for estimated loss in purchase discounts "which we would have realized upon the additional purchases arising from the adjustment of our sales volume," and in so adjusting took into consideration the percentage of discounts earned to all purchases for the fiscal year ending April 30, 1943, so that for the above reason this adjustment is not permissible.[4] (d) In the first reconstruction adjustment was made for $1,400 legal fees disbursed within the fiscal year ending April 30, 1937. Though the evidence is that they were "in connection with reorganization of the business," the record does not justify treating the entire amount as abnormal expenses of the change in business and no allocation of the amount is shown.[5] (e) The reconstruction also took into consideration a $1,238.16 loss contended to have been incurred to merchandise because of the bursting of some water pipes in the fiscal year ending June 30, 1939. The record before us contains no evidence whatever on the point and no reason appears for an adjustment for abnormality on that account. No adjustment was made on the first reconstruction for increase in bad

---

[4] Moreover, in making the latter adjustment, the percentage used, adopted from the fiscal year ending April 30, 1943, is 1.95 per cent, despite the fact that in the application for relief it is recited that normal discount earned was 1.91 per cent—and this figure is used as to the Schrafft discounts. The average purchase discount, under the evidence, during the base period years, is 1.82 per cent.

[5] The claim for refund lists $1,300 as for "legal fees in connection with services rendered re : obtaining extension on creditors' claims and liabilities arising prior to May 1, 1936," and lists $100 as "legal fee for services rendered regarding old matters arising prior to existence of corporation." Thus, it is rendered doubtful whether such payments were abnormal.

debts. It thus appears that since the figures for adjustment in net profits ($6,106, etc.) and adjustment for additional purchase discounts ($1,445, etc.) are based upon events or conditions after December 31, 1939, and since the abnormal expenses ($1,400 and $1,238) are unproven, all of such adjustments must be eliminated, thus leaving the net profits as adjusted by the revenue agent as shown in the claim for relief, therefore leaving the petitioner without showing of any "reconstructed net profit."

Therefore, even if we were to assume, contrary to our conclusion above, that the "push back" is otherwise justified under the statute, petitioner's first reconstruction must be rejected since it fails to establish any fair and just amount representing normal earnings to be used as a constructive average base period net income.

With reference next to petitioner's second reconstruction of a constructive average base period net income of $9,601, it is to be noted that it assumes that the calendar year 1939 was normal, whereas the first reconstruction under the "push back" rule must be upon the theory that the business did not reach by the end of the base period the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business 2 years earlier. The second reconstruction is, therefore, inconsistent with the first.

On brief the petitioner says that the second reconstruction "proceeds on the theory that the reorganization in May, 1936, was a change in the character of the business * * *. The reconstruction uses the actual calendar year—1939 sales as normal." Passing the question whether, petitioner's last base period year ending April 30, 1940, it may compute upon the base of its actual sales in the last calendar year, and whether the calendar year 1939 was in fact normal for the petitioner, it appears that the change in 1936 was not substantial in the sense of Regulations 112, sec. 35.722–3 (d), since such change "must be reflected in an increased level of earnings * * *," and the evidence is that the net earnings were greater in the first 2 years of the base period than in the last 2 years. Thus, it appears that any effect, upon earnings, of the alleged change in 1936, was felt only in the first 2 years and the second reconstruction of the whole base period based on such a theory lacks rational basis.

Again we find that the facts in evidence do not support the purported reconstruction. It uses the calendar year 1939 as normal, and adjusts earlier years to it. The figures which petitioner uses as the industry figures for the second reconstruction are those appearing in Joint Exhibit 3–C (a protest, as to excess profits tax for 1943) as to which the stipulation to which it is attached specifically states that the

matters, statements and figures are not stipulated to be true or false; therefore, the figures used by petitioner for the industry are not in evidence before us. Moreover, the parties offered as Exhibit 5-E the "Confectionery Sales and Distribution," issued by the United States Department of Commerce, with agreement that the contents were true. The figures in the two exhibits are not the same and they do not give the same results. Petitioner's accountant as a witness stated that the figures in Exhibit 5-E are not the same as those used in the second reconstruction. Petitioner's second reconstruction, therefore, appears to that extent without basis in the evidence. The petitioner suggests that based upon stipulated figures for gross sales for all United States corporations the results would be approximately the same. This is not, however, demonstrated, and it appears from applying the index of such gross sales to petitioner's net sales, and applying 1.34, the percentage of petitioner's net profit to net sales for its last base period year, which it regards as normal, that average base period net income so reconstructed would be $4,556.21. Therefore the reconstruction proposed by petitioner does not give the petitioner relief greater than the $5,274.77 computed under section 713 (e).

Moreover, the petitioner has adjusted for purchase discounts as in its first reconstruction, which as above seen is contrary to the provisions of section 722 (a) prohibiting giving regard to events after 1939.

The second reconstruction appears to assume, without proof, that the operational policies of the petitioner's trustees in the last base period year would, if applied to the two first years, have produced net results equal to the greater net profits in those years. The assumption is seen to be unjustified. *Arden-Rayshine Co.*, 43 B. T. A. 314; *7-Up Fort Worth Co.*, 8 T. C. 52, 63.

We conclude that neither of petitioner's reconstructions establishes a fair and just amount representing normal earnings used as constructive average base period net income, and that they do not demonstrate that actual average base period net income is not an adequate standard of normal earnings or that the average base period net income as computed under section 713 (e) does not reflect the normal operation for the entire base period of the business. We find no reason to apply section 722 (b) (5) as suggested in the alternative by the petitioner.

We, therefore, conclude that the petitioner has not shown it is entitled to relief under section 722 (b) (4) or (b) (5).

Reviewed by the Special Division.

*Decision will be entered for the respondent.*