Tober-Saifer Shoe Manufacturing Co., formerly known as Tober-Saifer Shoe Company, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 26547.  Promulgated December 26, 1951.

*Henry C. Lowenhaupt, Esq.*, for the petitioner.
*Frank Cavanaugh, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* The petitioner seeks relief from excess profits taxes under section 722 (b) (4) of the Internal Revenue Code. In its application for relief, filed with the Commissioner, petitioner contends

that there were changes in the management of the business and in the character of the business and increases in the capacity for production. At the hearing and on brief petitioner narrows its position to merely a change in the character of the business. It contends that on January 1, 1936, it was an ordinary shoe jobber and that since that time, i. e., "By the end of 1937 the *Jolene Plan* was in effect and the character of petitioner's business had changed."

Considering the conclusion to which we have come, as set forth below, we find it unnecesary to pass upon the question as to whether, as respondent contends, petitioner's theory and evidence are not within the claim for refund, or whether there was in fact a change in the character of petitioner's business for, as the text of the statute shows, the petitioner must not only demonstrate, on its theory, that there was a change in the character of the business but must also demonstrate that "the average base period net income does not reflect the normal operation for the entire base period of the business." *East Texas Motor Freight Lines*, 7 T. C. 579. Under the language of section 722 (a) relief is given only to the taxpayer who "establishes * * * what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income * * *." *Singer Bros., Inc.*, 15 T. C. 683. It is stipulated that petitioner's average base period net income computed under section 713 (f) is $40,184.41.

The petitioner must reconstruct an average base period net income of more than $40,184.41, otherwise it would not be shown that its "average base period net income does not reflect the normal operation for the entire base period of the business."

Petitioner has failed to set up such reconstruction and to make the necessary showing. Its proposed reconstruction, based on a "projection" of its operations for 2 years, is derived from its claim that it would have had at least 300 exclusive Jolene Plan accounts, that they would have minimum average annual purchases of $10,000 per account, or a total average annual sales of $3,000,000, and that average earnings would be 3, 3½, or 4 per cent, as expressed in the opinion of Tober, petitioner's president. By this theory, petitioner claims a reconstructed average base period net income in the amount of $70,659.10.

Petitioner, in the first place, fails to prove that it would have had 300 exclusive Jolene Plan accounts by "projecting" its operations for 2 years because of the alleged change of character of the business. Petitioner relies on Exhibit 8 [1] to prove that it acquired two new

---

[1] Exhibit 8 is a mere list of names and addresses, two listed under 1937, 10 under 1938, and 137 under 1939, with dates opposite those (except 5) listed under 1939.

Jolene Plan accounts in 1937, ten in 1938, and 137 in 1939, and from this premise contends that 300 is the minimum average for the base period.[2] The exhibit fails so to demonstrate. Under the evidence of Boersig, the petitioner's secretary, the list, Exhibit 8, was a "list of dealers that we had—particularly the dealers we opened up in the year 1939"; also, with reference to the list, asked "Were they all Jolene operators" he answered "No they weren't. We opened up the account, at this time figuring we could make an exclusive Jolene account out of them." The list is, thus, not one of the exclusive Jolene Plan accounts, but a mere list of dealers, with hope or expectation on petitioner's part in that regard. It is thus seen as no basis for the petitioner's contention. On the basis of the record before us we are unable to determine the number of Jolene Plan accounts petitioner had during the base period years, and in the absence of such information it becomes impossible to arrive at any figure for "projecting" its operations. On its own theory, petitioner's basis of reconstruction fails altogether because of such failure of proof.

Also, with reference to petitioner's claim that a Jolene Plan account would purchase some $10,000 worth of shoes per annum: Petitioner contends, and the evidence shows, that no record was ever kept of sales to Jolene Plan accounts, separately from general accounts, and petitioner argues: "Without a separation of accounts it has been necessary to estimate constructive sales by a projection of sales prior to 1939." Petitioner therefore offered the evidence of Tober that a Jolene Plan account *should* purchase as a minimum $10,000 to $15,000 worth of shoes a year. It is not proved that any or the average Jolene Plan account during the base period purchased $10,000 worth of shoes per annum. Petitioner's application for relief filed with the Commissioner stated that under normal conditions it would take from 5 to 10 years to create consumer demand for a branded commodity, such as shoes. Yet, petitioner made no effort to prove that Jolene shoes were of such unusual quality that they would require a shorter time to be accepted on the market. The proof as a whole fails to demonstrate that even if the change had occurred two years earlier, the sales would have been in the large amounts contended for.

As to the rate of earnings from Jolene Plan accounts: Petitioner, on brief, states that $70,659.10, the amount of profit claimed on the reconstructed sales, is low. We have evidence as to the anticipated profit, measured in terms of percentage of sales, in the testimony of

---

[2] Though petitioner suggests that the evidence indicates five additional exclusive Jolene accounts, the evidence doth not bear out the idea. In any event, the addition does not alter the theory, or the conclusion.

Tober where he stated that he "wouldn't consider the operation profitable unless it earned between 3, 3½ or 4 per cent." Such testimony does not prove the average profits from the new Jolene Plan accounts. Moreover, Tober's testimony is not consistent with other evidence. The average base period actual net income was 1.438 per cent of sales, and despite Tober's statement about profit of 3 to 4 per cent, Boersig, on whose opinion and evidence petitioner relied, testified also that percentage-wise the profit would "probably be a little bit less" if more business was done—as petitioner, in effect, contends would have been the case if the change had occurred two years earlier. Asked to explain why the profit would be a little bit less he noted that they paid more for shoes. All this testimony is consistent with Tober's answer: "No question about that. The costs were tremendous * * *" in answer to a question, in effect, whether the cost of servicing the Jolene accounts was drawing in more overhead, getting more expensive as the plan took hold—though he added, in substance, that with the same costs they could service 1,000 accounts as well as 100. Boersig testified to the effect that he never estimated or computed any normal or fair percentage of income in proportion to sales—referring to the proposed constructive income from Jolene Plan accounts.

With the evidence showing that the figure 137, as to 1939 (upon which petitioner, as above seen, largely relies to indicate the 300 or more Jolene Plan accounts under the push-back rule) is not a figure other than one including other accounts; with the evidence showing the actual average profit on all accounts in the base period to be 1.438 per cent of sales, as against the 3 to 4 per cent profit figure used in petitioner's attempted reconstruction, and the indication that profit would be less in the earlier years considering the initial cost of the new plan, and with only a hope of high sales under such plan, it is clear, in our opinion, that the petitioner has not proven a reconstructed average base period net income greater than the amount allowed under section 713 (f).

Under all of the evidence, we hold that petitioner has failed to show a reconstruction of an average base period net income greater than the $40,184.41 of which it has the benefit under section 713 (f), Internal Revenue Code; therefore has not shown itself entitled to relief under section 722 (b) (4).

Reviewed by the Special Division.

*Decision will be entered for the respondent.*