*Decision will be entered under Rule 50.*

JEFFERSON AMUSEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27267.   Promulgated April 9, 1952.

*Milton H. West, Esq.*, and *Lamar Cecil, Esq.*, for the petitioner.
*Irene F. Scott, Esq.*, for the respondent.

46

50

52

54

OPINION.

BLACK, *Judge:* Petitioner seeks relief as provided by section 722 of the Internal Revenue Code in regard to its excess profits tax liability for the years 1942, 1943, 1944, and 1945. Petitioner also seeks additional relief under the provisions of section 722 of the Code by reason of a constructive unused excess profits credit carry-over from 1940 and 1941 to 1942.

Petitioner contends it qualifies for relief under section 722 (b) (4) by reason of the following facts: (1) that it acquired during the base period years additional theatres; (2) that it remodeled and increased the seating capacity of a theatre during 1938; (3) that it entered into additional contracts during the base period years increasing the number of theatres to which petitioner rendered management or film

booking services; (4) that it was committed in 1939 to build two theatres which were completed and placed in operation during 1940; (5) that it changed the operation of its business in 1937 by assuming control of its confection and popcorn business, or that by commencing on January 1, 1936, the sale of candy and popcorn in its theatres there was a difference in products furnished; (6) that it changed its management in 1939; and (7) that during the base period years it changed the ratio of nonborrowed capital to total capital.

We shall consider in turn each of the factors relied upon by petitioner and determine whether it is entitled to relief by reason thereof, and, if so, the amount of relief to be granted petitioner.

Since we determine that petitioner is entitled to relief under the provisions of section 722 of the Code, an additional issue arises as to whether the relief granted to petitioner under section 722 interferes with the relief which is automatically granted to petitioner because it incurred during the base period certain abnormal deductions which satisfy the provisions of section 711 (b) (1) (J) of the Code.

### Issue 1—Additional Theatres.

A "change in the character of the business," section 722 (b) (4) of the Code,[1] includes, among other things, a difference in the capacity of operation. The stipulated facts in this proceeding show that by reason of the acquisition of theatres during 1936 and 1937, petitioner

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

\* \* \* \* \* \* \*

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or

had a difference in capacity of operation, and respondent does not contend otherwise.

The petitioner, seeking relief under the provisions of section 722 of the Code, must establish not only that its average base period net income was an inadequate standard of normal earnings because there was a change in the character of the business, section 722 (b) (4), but also must establish "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period." See section 722 (a) of the Code. It is the latter requirement that is the point in dispute in the first issue. In its brief petitioner has reconstructed additional earnings for certain of the theatres added to its business in the following manner:

| Theatre | 1936 | 1937 | 1938 |
|---|---|---|---|
| Rio | $4,338.31 | $1,589.78 | |
| Lyric | 4,762.68 | 1,941.32 | |
| Palace | 7,459.73 | 10,799.11 | $5,445.16 |
| Gem | 1,664.16 | | |
| Total, unadjusted for overhead | $18,224.88 | $14,330.21 | $5,445.16 |
| Additional profits as adjusted | $15,102.96 | $12,192.14 | $4,014.72 |

At the beginning of its base period years on January 1, 1936, petitioner owned, leased, or operated 14 theatres. Six of these theatres were located in Beaumont, five were located in Port Arthur, two were located in Orange, and one was located in Anahuac. During 1936, petitioner built a theatre in Beaumont, one in Nederland, and one in Mont Belview, and the Lyric in Port Neches was purchased during the same year. In 1937, petitioner purchased a theatre located in Silsbee and leased a theatre in Orange. At the end of 1939, petitioner had 20 theatres, of which 19 were operating.

Petitioner in its excess profits tax returns computed its average base period net income in accordance with the provisions of section 713 (e) of the Code, making use of a general average and without adjustment under the provisions of section 711 (b) (1) (J) of the Code. Petitioner's average base period net income as computed on its 1943 and subsequent excess profits tax returns without consideration of section 711 (b) (1) (J) was as follows:

| Year | Excess profits net income |
|---|---|
| 1936 | $206,125.58 |
| 1937 | 294,302.79 |
| 1938 | 271,532.14 |
| 1939 | 216,895.53 |
| Total | $988,856.04 |
| Average | $247,214.01 |

Petitioner's average base period net income for the years 1940 and 1941 as used on its tax return for 1942 for computing the unused excess profit credit was $247,250.43.

Respondent's principal contention as basis for denying relief to petitioner under section 722 of the Code on account of these five theatres added during the base period is that petitioner's actual earnings during the base period (as indicated by the excess profits net income for the base period years as set forth above) did not increase after petitioner increased its capacity. Respondent contends that the constructive average base period net income as computed from petitioner's normal earnings during the base period would be smaller than petitioner's actual average base period net income. Respondent would ignore the fact that but for the additional theatres added by petitioner during 1936 and 1937, petitioner's earnings in the subsequent base period years would have been considerably smaller than they in fact were. By reason of the addition of theatres to its business during the base period petitioner thereafter had greater receipts and larger earnings than it would have had if the increase in capacity had not been made, and we think that petitioner's earnings in 1939 from the added theatres did increase petitioner's excess profits net income for 1939 over what it otherwise would have been and that this entitled petitioner to reconstruct earnings for the other three base period years, 1936, 1937, and 1938.

Petitioner makes no contention for the application of the 2-year push-back rule but asks for reconstruction on the basis that these five added theatres had reached their normal level of earnings by the end of the base period, December 31, 1939.

Petitioner was operating a chain of motion picture theatres and during the base period petitioner added to that chain a number of theatres which were located in towns where theatres had not theretofore been operated by petitioner. We think that petitioner's average base period net income is to be considered an inadequate standard of normal earnings because of this change in the character of petitioner's business.

After a careful consideration of all the evidence we conclude that in a reconstruction of petitioner's average base period net income for the purpose of arriving at petitioner's constructive average base period net income there should be added $4,880.86 for the five theatres added to its business during the base period.

*Issue 2—Remodeling Resulting in Increase in Capacity.*

Petitioner remodeled its Pearce Theatre in Port Arthur, Texas, and increased its capacity to 627 by adding 61 seats. The theatre was not in operation during the period March 11, 1938 to May 11, 1938, while

it was being remodeled. For these reasons petitioner in its brief seeks a constructive increase in its base period net income as follows:

|  | 1936 | 1937 | 1938 | 1939 |
|---|---|---|---|---|
| Net theatre profit per books | $10, 108. 44 | $12, 897. 56 | $15, 843. 20 | $14, 920. 69 |
| Net increase in base period net income | 4, 970. 10 | 10, 554. 70 | 3, 113. 71 | None |

In computing the net increase in base period net income in the amounts set forth above, petitioner used the earnings of the Pearce Theatre during the year 1939 as normal earnings. Then, to reconstruct the theatre's earnings for prior base period years petitioner applied the index of yearly earnings for all its theatres operated throughout the base period years. In so doing petitioner erred, for such a reconstruction was not warranted from the record. Petitioner failed to introduce any evidence that would indicate that during the year 1939 the increase in the number of seats resulted in a higher level of normal earnings. Moreover, petitioner failed to establish that the index used in the reconstruction was an appropriate one. In our opinion, petitioner has failed to establish what would be a fair and just amount representing normal earnings, section 722 (a), and that "the average base period net income does not reflect the normal operation for the entire base period of the business" because of the section 722 (b) (4) factor. Petitioner is not entitled, therefore, to relief under the provisions of section 722 of the Internal Revenue Code. *Singer Bros., Inc.*, 15 T. C. 683, and *Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894. The facts indicate that the yearly attendance and earnings of petitioner's Pearce Theatre were influenced by factors other than its seating capacity, for in accordance with our Findings of Fact:

| Year | Attendance | Earnings per books |
|---|---|---|
| 1936 | 292, 178 | $10, 108. 44 |
| 1937 | 231, 865 | 12, 897. 56 |
| 1938 | 241, 623 | 15, 843. 20 |
| 1939 | 267, 957 | 14, 920. 69 |

The attendance for the Pearce Theatre during the year 1936, which was before the addition of 61 seats, was greater than during the year 1939, after the addition. Moreover, the earnings of this theatre were less during 1939 than they were during 1938, when the theatre was not in operation for 2 months and for an additional period in excess of 2 months that the theatre operated with a smaller seating capacity than in 1939.

### Issue 3—Service Fee Contracts.

During its base period years petitioner received substantial amounts of fees for managing certain theatres and for booking films for other theatres. Petitioner acquired during the base period three additional contracts for the buying and booking of film, and by reason of this

it contends it is entitled to relief under section 722 (b) (4) of the Code as a "difference in capacity." This part of petitioner's business was essentially that of rendering services to other theatres. The determination of what constitutes a "difference in capacity" for such a business is unlike that for a manufacturer with its capacity measurable by physical facilities, and this fact is recognized in the Treasury Department Bulletin on Section 722 (November 1944) at page 55:

Other corporations are engaged in business activities which are not related to the production of goods but involve selling operations or the rendering of services. In these instances an increase in the capacity for operation results from an increase in capacity to make sales or render services. For example, an automobile dealer operates under a franchise from the manufacturer which permits it to sell automobiles in a specified territory. The franchise is revised and as a result the dealer's territory is greatly enlarged. The extension of the dealer's franchise would ordinarily represent an increase in its capacity for operation.

The evidence presented by petitioner herein is to the effect that during the base period it secured additional clients for its management and booking services. That is the extent of petitioner's proof and that alone does not constitute a difference in capacity. The facts established by petitioner may, when coupled with other facts, constitute an increase in capacity, see the example of a franchise for an automobile dealer quoted above, but petitioner has not established that the geographical area of its circuit was increased by reason of these additional contracts. From the evidence established by petitioner, we are unable to conclude that the capacity for operation of its management and booking services was increased during the base period to any substantial degree. We must, therefore, deny any relief on this particular ground.

### Issue 4—Commitment.

The fact that petitioner was committed to erect two theatres within the meaning of section 722 (b) (4), I. R. C., is clearly established by the evidence and is not disputed by respondent. Respondent does contend, however, that petitioner is not entitled to relief because petitioner has not established that its normal earnings increased by reason of the increase in capacity. While petitioner might have presented in the evidence additional facts relating to normal earnings level of the two theatres to which it was committed,[2] petitioner did

---

[2] As we explained in *Victory Glass, Inc.,* 17 T. C. 381:

Each taxpayer seeking relief should make its proof as clear and convincing as possible to obtain the full benefit granted by the law. Perhaps this petitioner could have offered more and better proof in support of its application. Still, the Commissioner has a regulation which provides that relief is in order where a business is commenced during the base period and shows a steady growth to the end of that period and it is difficult to understand how he could fail to grant some relief in a case like this. Regulations 112, section 35.722–3 (d).

For a discussion of the relief to be granted in the case of a commitment see Regulations 112, section 35.722–3 (d) (5).

establish sufficient facts for us to determine that it is entitled to some relief.

Respondent further contends that petitioner erred in reconstructing the additional earnings and relief to be granted for the Grove and Port Theatres. The sum of the earnings for these two theatres during 1941 as reflected by petitioner's books amounted to $12,666.13, and its total theatre earnings, including those of the Grove and Port Theatres, were $201,400.99 for the year 1941. Such events, though occurring subsequent to December 31, 1939, may be considered in commitment cases, section 722, I. R. C., and Regulations 112, section 35.722–3 (d) (5) which provides:

* * * Although no regard should be had to actual earnings after December 31, 1939, as indicative of the amount of normal earnings attributable to the change, ratios existing between such earnings and earnings from other operations of the taxpayer or of similar taxpayers or an industry of which the taxpayer is a member may be taken into account. * * *

Petitioner's reconstruction of base period earnings arising from the commitment was based upon book earnings, and, as so reconstructed petitioner seeks relief during 1941 and subsequent excess profits tax years,[3] as follows:

| Year | Reconstructed earnings: Grove Theatre |
|---|---|
| 1936 | $13,057.81 |
| 1937 | 21,061.56 |
| 1938 | 14,474.39 |
| 1939 | 10,212.38 |
| Total | $58,806.14 |
| Average | $14,701.55 |

This reconstruction is not warranted from the record. We think, however, that because of the addition of these two theatres to petitioner's business its average base period net income was an inadequate standard of normal earnings, and that from the facts established by petitioner we are able to determine a reasonable amount of relief to be granted petitioner. See *Victory Glass, Inc.*, 17 T. C. 381. In a reconstruction of petitioner's average base period net income for the purpose of arriving at petitioner's constructive average base period net income there should be added $5,000 because of the two theatres to which petitioner was committed prior to the end of the base period and which were actually constructed and put into operation in 1940. This estimate of relief is not meant to include confectionary profits, if any, that would have been earned from these theatres.

---

[3] Petitioner claims no relief during the year 1940 from the commitment because of Regulations 112, section 35.722–3 (d) (5) at page 148 and Bulletin on Section 722 (November 1944) page 120 et seq.

### *Issue 5—Candy and Popcorn Sales.*

On January 1, 1936, petitioner commenced the sale of candy and popcorn in some of its theatres through licensing a concessionaire, which was a partnership composed of two employees of petitioner. Petitioner purchased the assets of the partnership in October 1937, and after October 31, 1937, petitioner operated the candy and popcorn business itself.

Respondent contends that the change in operation of the confectionary units in petitioner's theatres for its own account rather than through a concessionaire is not a substantial change in petitioner's operations and does not serve to qualify petitioner for relief under the provisions of section 722 (b) (4) of the Code. In view of the fact situation presented here we agree with respondent. The evidence indicates that upon termination of the concessions contract the salaries of the two employees were increased, and we do not know but that the concessions were availed of prior to November 1, 1937, to pay indirectly additional compensation to these two employees.

In some respects this issue is similar to the one in *Wisconsin Farmer Co.*, 14 T. C. 1021, where we held that petitioner changed the character of its business within the meaning of the statute by the substitution of contracts whereby the taxpayer became a direct agent for the underwriting insurance company instead of being a subagent of an insurance agent. In that case we accepted the general principles outlined in Regulations 112, section 35.722-3 (d), where it is provided that "A change in the character of the business for the purposes of section 722 (b) (4) must be substantial in that the nature of the operations of the business affected by the change is regarded as being essentially different after the change from the nature of such operations prior to the change." See also *Avey Drilling Machine Co.*, 16 T. C. 1281, 1298. In this proceeding the facts occurring in 1937 do not in our opinion constitute a substantial change for petitioner, and in this respect the facts in the instant case differ from those presented in *Wisconsin Farmer Co., supra.*

Respondent does not in his brief contest the petitioner's alternative contention that a change in the character of the business occurred on January 1, 1936, because of a "difference in the product or services furnished." We think the commencement of the selling of popcorn and candy qualifies as a section 722 (b) (4) factor, and that as the other statutory requirements are met petitioner is entitled to relief.

Respondent contests the petitioner's reconstruction of earnings. The relief as reconstructed in petitioner's brief for confectionary profits may be summarized as follows:

*Increase in Earnings for Confectionary Profits—E. P. T. Year 1940*

| Base period year | 14 theatres | Theatres added in base period | Total |
|---|---|---|---|
| 1936 | $9,902.12 | $2,937.92 | $12,840.04 |
| 1937 | 7,133.22 | 2,439.44 | 9,572.66 |
| 1938 | | 234.70 | 234.70 |
| 1939 | | | |
| Total | $17,035.34 | $5,612.06 | $22,647.40 |

*Increase in Earnings for Confectionary Profits—E. P. T. Years after 1940*

| Year | 14 theatres | Theatres added in base period | Theatres committed to at 12/31/39 | Total |
|---|---|---|---|---|
| 1936 | $12,783.65 | $4,776.64 | $1,991.41 | $19,551.70 |
| 1937 | 10,541.48 | 3,761.72 | 2,090.83 | 16,394.03 |
| 1938 | 4,212.82 | 1,453.04 | 1,724.85 | 7,390.71 |
| 1939 | 3,998.20 | 1,396.38 | 1,607.09 | 7,001.67 |
| Total | $31,536.15 | $11,387.78 | $7,414.18 | $50,338.11 |

Petitioner has reconstructed profits from confectionary units on the basis of attendance. As indicated in its reconstruction the ratio of confectionary sales to theatre attendance varied widely from year to year and from theatre to theatre, and we are not convinced by the record that theatre attendance is an appropriate index. Certain other assumptions were made in petitioner's reconstruction to which respondent has appropriately taken exception in his reply brief. It is proper, however, for us to reconstruct what is a reasonable amount of relief if this can be done from the record, *Del Mar Turf Club*, 16 T. C. 749, 766, *Victory Glass, Inc., supra.* In our Findings of Fact we have found that $2,500 should be added as relief because of this factor for the year 1940, and that for the other taxable years $3,800 sould be added. We so hold.

### *Issue 6—Change in Management.*

Petitioner contends it is entitled to relief because in 1939 there was a "change in the management of the business." We have held that where the taxpayer failed to show that there was a meaningful change in management and where it also failed to show that a higher level of earnings resulted from the alleged change, the taxpayer is not entitled to relief, *Toledo Stove & Range Co.*, 16 T. C. 1125. Petitioner has not established to our satisfaction either of these facts, and in its reconstruction has made no claim for relief. Since petitioner did not clearly abandon this issue and it is necessary for us to decide it, we, therefore, determine that the alleged change in management is not such a substantial change as would entitle petitioner to relief under section 722 of the Code.

*Issue 7—Change in Capital Ratio, Section 722 (b) (4).*

Petitioner contends it is entitled to relief under the provisions of section 722 because of a seventh factor, that there was a "difference in the ratio of nonborrowed capital to total capital." We think that the facts as stipulated establish that there was a change in the character of the business within the meaning of section 722 (b) (4). An applicant for relief under section 722 (b) (4) must also meet the requirements of section 722 (a), I. R. C., by establishing "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period."

It is the respondent's contention that petitioner is not entitled to relief because it failed to establish the second requirement of section 722 (a) of the Code. Respondent states in his brief:

There is no evidence in the record, however, to show the amount of interest paid during each of the years 1936 to 1939, * * * which represents interest on borrowed capital, as that term is defined in section 719 of the Code. Nor does the record disclose what part, if any, of the reduction in the amount of interest received is due to the disposal of the asset which produced such interest in order to reduce the amount of borrowed capital.

We think that respondent's objection that during the base period petitioner may have disposed of assets and used the proceeds to reduce borrowed capital is, under the circumstances, without merit. The petitioner's tax returns for the base period years which are in evidence disclose that petitioner sold only one asset of any significance during the base period and that was the Texas Theatre Supply Company stock which was sold in 1938 for $10,021.60. During the base period petitioner reduced its borrowed capital by substantially greater amounts.

It is apparent from the table in our Findings of Fact which facts were stipulated by the parties as being correct, that all the interest, or substantially all of the interest incurred by petitioner during the base period years, was attributable to its borrowed capital. Under the circumstances we think that the relief sought by petitioner for the difference in the ratio of nonborrowed capital to total capital is not to be denied on the basis of the contentions of respondent.

The facts as stipulated are sufficient to compute the interest adjustment for the reconstruction of petitioner's base period earnings under the provisions of section 722 of the Code. We determine that petitioner is entitled to relief on account of this factor in the amount of $3,661.04 as computed in our Findings of Fact. See Regulations 112, sec. 35.722–3 (d) (4).

## *Issue 8—Section 711 (b) (1) (J) Adjustment.*

We have considered each of the seven factors upon which petitioner relies as basis for relief under the provisions of section 722 (b) (4) and have determined that petitioner is entitled to some relief as to some of them under section 722 of the Code.

A final issue arises, therefore: Does the relief granted to petitioner under section 722 interfere with the relief which is automatically granted to petitioner because it incurred during the base period certain abnormal deductions which satisfy the provisions of section 711 (b) (1) (J) of the Code? In computing its excess profits net income for the base period years as used in its excess profits tax returns petitioner made no adjustment under the provisions of section 711 (b) (1) (J) of the Code. The parties have stipulated, however, that because of abnormal deductions as defined by section 711 (b) (1) (J) of the Code arising from legal and auditing expenses incurred by petitioner during the base period years it was entitled during each excess profits tax year to a larger average base period net income than that claimed by petitioner on its return. The adjusted amounts as stipulated are set forth in the last paragraph of our Findings of Fact, as well as the average base period net income used by petitioner on its excess profits tax returns for each year. As an illustration for the purpose of making clear the point of difference here between the parties, we will take the year 1940. The average base period net income as used by petitioner for that year on its tax return was $247,250.43. The parties have stipulated that petitioner's average base period net income to be used for that year, after giving effect to section 711 (b) (1) (J) adjustment is $251,560.11. It is petitioner's contention that whatever increases we may find petitioner entitled to resulting from the grounds which it has proved under section 722 (b) (4) should be added to the figure of $251,560.11, instead of the figure $247,250.43 in arriving at constructive average base period net income for the purpose of computing petitioner's excess profits credit.

Respondent, while contending that petitioner is not entitled to any constructive average base period net income at all, also contends that if we should hold otherwise and grant petitioner's right to constructive average base period net income relief, we should add such increases as we may find petitioner entitled to receive to the base of $247,250.43, and not to the base of $251,560.11. In other words, it is respondent's contention that the stipulated figure $251,560.11 is to be used in a recomputation under Rule 50 in case we do not find petitioner entitled to any constructive average base period net income relief at all. If we do find petitioner entitled to relief under section 722 it is respondent's contention that the figure $251,560.11 is not to be used at all. Such,

we understand to be respondent's position. We do not think respondent's position can be sustained. We see nothing in the statute to indicate that the adjustments to which petitioner is automatically entitled under section 711 (b) (1) (J) are to be changed or modified because relief is granted under section 722.

### *Constructive Excess Profits Credit Carry-over from 1940 and 1941 to 1942.*

As we have heretofore pointed out, the taxable years 1940 and 1941 are not involved except for the purpose of computing the constructive excess profits credit carry-over, if any, from those years to the taxable year 1942. We do not understand respondent to dispute petitioner's right to this constructive carry-over if we hold that petitioner is entitled to relief under section 722. Having held that petitioner is entitled to certain relief under section 722, the constructive carry-over from 1940 and 1941 to 1942 will be computed in accordance with the applicable statute and regulations under Rule 50.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*