*Decisions will be entered under Rule 50.*

INDUSTRIAL SUPPLIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19834.   Promulgated September 24, 1952.

*Furman Smith, Esq.*, for the petitioner.
*William J. Stetter, Esq.*, and *Stafford R. Grady, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* Petitioner is claiming relief under subsections (a) and (b) (4) [1] of section 722 of the Internal Revenue Code, upon the ground that it commenced business during the base period and changed the character of its business in 1939 by a change in operation or management and a difference in the product furnished.

The respondent concedes that petitioner commenced business during the base period and to that extent complies with one of the conditions for application of subsection (b) (4) but denies that petitioner changed the character of its business as alleged. The disagreement of the parties need not be decided, since, even assuming that petitioner has complied with both conditions, the petitioner, for reasons hereinafter set forth, has not sustained its burden under the statute which requires that it establish that the tax computed without the benefit of

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products * * * furnished, * * *

section 722 results in an excessive and discriminatory tax, and also establish a fair and just amount representing normal earnings to be used as a constructive average base period net income. Therefore, it is not entitled to relief under section 722 (b) (4).

Petitioner, having commenced business during the base period, is entitled to the 2-year push-back rule in subsection (b) (4). We have held that the function of the rule "is to establish a figure which is assumed to be the maximum amount which would have been earned by the taxpayer in its last base period year, if it had commenced business 2 years before it did," and that the assumed figure is then used in the reconstruction of the taxpayer's average base period net income. *Del Mar Turf Club*, 16 T. C. 749, 766. Petitioner had the burden of proof under the rule. *Singer Bros., Inc.*, 15 T. C. 683, 692. We said in *Pabst Air Conditioning Corporation*, 14 T. C. 427, 436, that "persuasive reasons, supported by adequate evidence, must be shown in order to reconstruct base period net income under the 'push back' rule."

Petitioner contends in its opening brief that if it had commenced business and made the changes 2 years earlier than it did, it would have reached a level of earnings of at least $45,000 in 1939. The amount was reduced to at least $40,000 in its reply brief. Respondent's position in the matter of earnings during the base period is that petitioner has failed to prove that it did not reach by the close of 1939 the level of earnings it would have reached if it had commenced business 2 years before it did.

The only direct evidence in the record on the matter of the earning level petitioner would have reached by the end of the base period if it had commenced business 2 years earlier than it did is testimony of Nixon, the only witness for petitioner at the hearing. He testified that he believed that petitioner would have reached a level of earnings of from $45,000 to $50,000 by December 31, 1939, if it had commenced business and made the changes described by him 2 years earlier than it did. More than the mere conclusion of the witness is necessary to establish the ultimate fact we are required to find. *7-Up Fort Worth Co.*, 8 T. C. 52, 63; *Pabst Air Conditioning Corporation, supra; Powell-Hackney Grocery Co.*, 17 T. C. 1484; *Farmers Creamery Co. of Fredericksburg, Va.*, 18 T. C. 241. Moreover, the opinion expressed by the witness was not based upon all of the facts of record and to that extent lacks a proper foundation. *Avey Drilling Machine Co.*, 16 T. C. 1281, 1299.

In its applications to the respondent for relief, petitioner claimed constructive average base period net income of $40,000, based upon assumed sales of $750,000 in 1939 and profit of about $47,000. The sales figure was reached by assuming that if it had commenced business 2 years earlier than it did, sales in 1939 would have exceeded

actual sales by the average of the increase of actual sales in 1938 and 1939 over the preceding year of each, but as the method used exceeded a point beyond which the business could not be expanded and operated at a profit, the figure was reduced to $750,000. Such a procedure is outside of the push-back rule. *Singer Bros., Inc., supra,* p. 693. Actual sales of petitioner in 1939 were only $420,561.15 or about 56 per cent of $750,000 and its net operating income was $4,993.09 or only about one-eighth of $40,000. Callaway was established as a customer as soon as petitioner commenced to operate. Sales to it in 1939 were about 42 per cent of total sales.

The statute prohibits consideration of post-1939 events to determine normal earnings of base period years. Section 722(a); *Clinton Carpet Co.,* 14 T. C. 581, 587; *Matheson Co.,* 16 T. C. 478, 488; *General Metalware Co.,* 17 T. C. 286, 293. Moreover, a comparison would not help petitioner, particularly in the absence of establishing the extent to which the war effort increased sales.

Actual sales in 1940 were only about $12,000 in excess of sales in the last base period year, which indicates that normal was reached in 1939.

Another basis for petitioner's contention that $750,000 represents a level of sales during 1939 is alleged ability to acquire customers from competitors; that the larger mills in the area in which it operated were sold for the first time in that year; and that sales to the five largest of them increased 282 per cent in 1941.

Petitioner's application to the Commissioner for relief in 1941 contains statements that in 1939 it obtained some very good accounts from which it had not theretofore received much business and that some of the new customers were listed in Exhibit F of the application. The list contains the names of 15 concerns, 11 of which made purchases of $86,870.01 in 1939, and all of them made purchases in 1941 totaling $260,375.94. Nixon testified that the list was representative of the larger customers sold for the first time in 1939. Other than proof that two of the customers operated 25 per cent and 50 per cent, respectively, more spindles than Callaway, no showing was made of the productive capacity of the concerns. The record does not establish that the customers selected by petitioner were the larger mills in the area in which it operated. The unreliability of the exhibit is otherwise shown. At least three of the mills made no purchases until 1941, and 1940 was the first year in which another concern made a purchase. One alleged customer made purchases of less than $100 in 1939 and 1941, and none in 1940. The purchases of another mill were less than $200 in any of the years. Thus, the record before us fails to prove the premise on which the argument of petitioner is made.

The parties agree that the best index of textile mill requirements for supplies sold by petitioner is reflected in the spindle hours operated in cotton growing states. During the last quarter of 1939 petitioner's net sales were $6.39 per thousand spindle hours. Using the same formula, sales were about $5.54 in 1940 and $8.05 in 1941, a year in which sales to Callaway, a customer which gave petitioner preference in the purchase of its requirements of mill supplies, were about $341,000 as compared with about $177,000 in 1939 and about $180,000 in each of the years 1937 and 1938. Sales to Callaway in 1940 are not available. Thereafter sales to 1945, computed on the same basis, did not exceed about $7. Petitioner made sales during and after the base period of material to customers outside of the textile industry. No proof was made by petitioner of the extent of such sales and it may not be assumed that they would favor its claim here if we had the figures with which to make the adjustment that would be necessary under a computation by the spindle index.

Petitioner is entitled to excess profits credits of $15,321,[2] $16,144.58, $16,553.19, and $16,783.78 for the years 1941, 1942, 1943, and 1944, respectively, under computations based upon the invested capital method. To be entitled to relief under section 722 (b) (4) petitioner is required to establish a level of earnings in 1939 that would result in reconstructive average base period net income which would result in credits in excess of those amounts. *Singer Bros., Inc., supra; Blaisdell Pencil Co.*, 16 T. C. 1469, 1484; *Tober-Saifer Shoe Manufacturing Co.*, 17 T. C. 1042. Petitioner had an earning experience during the base period and "any reconstruction of earnings must bear some relationship to that experience." *Avey Drilling Machine Co., supra*, p. 1300. The least amount of earnings which petitioner requested us to find for 1939 is eight times actual earnings of $4,993.09 for that year. Operating income in 1940 was only $10,819.81 and thereafter from a high of about $43,000 in 1942 it decreased to about $26,000 in 1945. The record made here does not support a finding of assumed earnings in 1939 under the push-back rule sufficient in amount to give petitioner a reconstructive average base period net income which would result in a credit in excess of amounts to which it is entitled without section 722 relief. Accordingly,

*Decision will be entered for the respondent.*

Reviewed by the Special Division.

---

[2] Not including $5,714.97 as carry-over credit from 1940.