OPINION. Black, Judge: To be entitled to general relief from excess profits taxes petitioner must satisfy two requirements which appear in section 722 (a) of the Code, as follows: In any case in which the taxpayer [1] establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and [2] establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. Petitioner contends that it satisfies the first requirement that the taxes are excessive and discriminatory, which is further defined in subsections 722 (b) and (c), because of the following three factors: installing new equipment which changed the method of operation and increased productive capacity (section 722 (b) (4)), converting the sales organization from commission salesmen to independent contractors (section 722 (b) (4)), and a strike in 1936 (section 722 (b) (1)). Immediately prior to the base period years, petitioner was predominantly a hand baking shop with little mechanical equipment. Over a four year period commencing in 1934, machinery was installed in place of hand operations in virtually every phase of the baking process. By the beginning of 1936 machinery investment was $i4,070. By 1938 this had increased to more than $22,000, in ’addition to a $6,000 improvement which doubled the size of its plant. At the completion of this program every process was performed by machinery. Material waste, dough failure, poor baking, and culls were reduced significantly. The earning level has thus been substantially increased by a reduction of ingredient cost. This mechanization program was a change in operation which constituted a “change in the character of the business” within the scope of section 722 (b) (4). 7-Up Fort Worth Co., 8 T. C. 52. The applicable statute is printed in the margin.[1] We have found that this change results in petitioner’s taxes being excessive and discriminatory, meeting the first requirement of section 722 (a). Rand Beverage Co., 18 T. C. 275; East Texas Motor Freight Lines, 7 T. C. 579. Respondent contends that the change in method of operation is not a 722 (b) (4) qualifying factor because the mechanization program merely modernized an obsolete plant and represented normal modernization without placing petitioner’s plant in a position superior to the industry. There is no precedent either in the statute or the cases under 722 (b) (4) which requires a taxpayer to show relative superiority in the industry. It is clear that during the base period years petitioner completed the modernization of its plant which had been begun immediately prior to the base period years. When all the facts attendant upon the change and resulting from it are considered, we think this was a change in petitioner’s business which qualifies it for relief under section 722 (b) (4). We next come to the second requirement of section 722 relief which is for petitioner to establish a fair and just amount representing normal earnings of the petitioner to be used as the CABPNI. In our Findings of Fact it is disclosed that the Commissioner, after making certain adjustments to petitioner’s excess profits net income for each of the base period years, arrived at a determination that petitioner’s actual average base period excess profits net income was $1,970.17. In arriving at this determination the Commissioner determined that for the year 1938 petitioner’s excess profits net income was $3,640.70. The Commissioner then applied the “Growth Formula” provided in section 713 (f) of the Code and determined that petitioner’s average excess profits net income to be used in the computation of its excess profits tax liability for the taxable years was $3,640.70. In order to secure relief under section 722 petitioner must prove a CABPNI greater than the average base period excess profits net income which the Commissioner has allowed under section 713 (f). In proving this greater CABPNI, it must be done without the application of the growth formula provided by section 713 (f). See Homer Laughlin China Co., 7 T. C. 1325. In arriving at our finding of $7,654.62 as the CABPNI to be used, we have observed the rule of the Laughlin China Co. case. At the conclusion of its brief petitioner contends that its CABPNI should be $26,542.90, while respondent questions the reconstruction in entirety because of alleged failure of proof. Petitioner did not maintain any books or records for 1936 and 1937, but submitted profit and loss statements from its Federal tax returns. For 1938 and 1939 petitioner submitted its records of profit and loss from its books which were not broken down in great detail. Petitioner is a relatively small business, and is not precluded from section 722 relief because it did not maintain and preserve intricate cost accounting records. Of course, to the extent relevant proof is missing, it will be construed against petitioner who has the burden of proof. Reconstruction — Change in Method of Operation. We have found as a fact that in the year 1939 petitioner experienced normal operations from the introduction of the new machinery. We have found that the primary economy resulting from the new machinery was the reduction of the cost of ingredients used per unit of product. Adjustments were made to the figures for sales and ingredient costs for the base period years so that the figures would be economically comparable to reflect the increase in efficiency of operation methods. A comparison of the ratio between sales and ingredient costs shows a considerably smaller relative ingredient cost for 1939 than the earlier years. We think the evidence establishes that this substantial difference in cost of ingredients per unit of product is to be attributed to an increase in the efficiency of the change in method of operations. We have made an adjustment to actual earnings for this factor in the Findings of Fact, The machinery which brought about the increase in efficient operation also was directly responsible for increased expenses. Adjustments have been made for these increased expenses in the facts, Rand Beverage Co., supra, p. 289. All of this is shown in our Findings of Fact and need not be repeated here. Reconstruction — The Strike. Petitioner’s bakers were on strike for approximately three months during the spring of 1936, which was the only strike in its history. The petitioner was able to replace the striking bakers with the result that production was not substantially curtailed, but this result was achieved only at considerable extra cost for salaries, room, board, and protection. The strike in 1936 was an unusual and peculiar event in the experience of petitioner and qualifies petitioner for relief under section 722 (b) (1) printed in the margin.[2] Section 35.722-3, Regulations 112, says, among other things: Unusual and peculiar events contemplated in section 722 (b) (1) consist primarily of physical rather than economic events or circumstances. Except as otherwise described in this paragraph, such events would include floods, fires, explosions, strikes, and other such exceptional and uncommon circumstances hindering production, output, or operation; * * * Petitioner contends that its 1936 costs of production were increased $8,775.17 because of the strike and that its income for that year would have been, that much greater if it had not been for the strike. Respondent concedes that the strike was an unusual and peculiar event in the experience of petitioner and comes within the provisions of section 722 (b) (1), but contends petitioner has failed in its proof to establish any increased costs. It is clear from the record that additional costs were incurred but that petitioner has not maintained precise records for those costs. Where an expenditure is certain but its precise amount unclear, we make an estimate bearing hard upon the petitioner who has the burden of proof. National Grinding Wheel Co., 8 T. C. 1278, 1286; Jefferson Amusement Co., 18 T. C. 44, 62. We have found those abnormal strike costs to be $3,000 and have adjusted actual earnings accordingly, as shown in our Findings of Fact. Reconstruction — New Method of Distribution. In our Findings of Fact we have held against petitioner as to this alleged ground for relief, except to the extent that an adjustment of $2,862.03 in 1937 has been made by the Commissioner by reason of an abnormal bad debt deduction of petitioner in that year attributable to the change-over in method of distribution. In view of our Findings of Fact relating to this alleged ground for relief, it requires no further discussion. Reconstruction — Ghamge in Capacity. Petitioner’s mechanization program was accompanied by an increase in the size of its building. We have already found that under its mechanization program petitioner reached its normal level of earnings in 1939. Petitioner has not shown that any increased capacity arising from increasing the size of its building would have resulted in increased sales in 1936, 1937, and 1938. Petitioner has not shown that its sales were limited by any lack of capacity in those years. We, therefore, find no adjustment is in order because of petitioner’s increased capacity in computing its CABPNI. See National Grinding Wheel Co., 8 T. C. 1278; Green Spring Dairy, Inc., 18 T. C. 217. For reasons hereinbefore stated, we hold that a CABPNI of $7,654.62 should be used in determining petitioner’s relief from exr cess profits taxes instead of the $3,640.39 which the Commissioner has used under the growth formula. Reviewed by the Special Division. Decision will be entered wider Rule 50. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. **•••*• (b) Taxpayers Using Average Earnings Method. — -The tax computed under this sub-chapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income Is an Inadequate standard of normal earnings because— ******* (4) the taxpayer, either during or immediately prior to the base period, commenced business' or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business* two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term ‘‘change in the character of the business” includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. * * ■ * * » * (b) Taxpayers using Average Earnings Method. — The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because— (1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in tha experience of such taxpayer, * * *